**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JEFFREY SPINDEL, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ALDERFER FAMILY FARM LLC and ALDERFER POULTRY FARM, INC. ,<br><br>　　　　　Defendants. | CASE NO. 7:23-cv-10710-PMH<br><br>**ANSWER AND AFFIRMATIVE DEFENSES** |

Defendants Alderfer Family Farm LLC ("Alderfer Family")[1] and Alderfer Poultry Farm, Inc. ("Alderfer Poultry" and collectively with Alderfer Family, "Defendants"), by and through their counsel, hereby submit this Answer with Affirmative Defenses to the Complaint filed by Plaintiff Jeffrey Spindel, on behalf of himself and all others similarly situated (the "Complaint"), and responds, alleges, and avers as follows:

**<u>INTRODUCTION</u>**

(1)　　This is a consumer protection case concerning deceptive marketing representations about shell eggs produced by Defendants Alderfer (the "Products").

**ANSWER:**

1.　　This Paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 1.

---

[1] Alderfer Family Farm LLC does not process, label, market, distribute, or sell shell eggs and thus is improperly named as a Defendant. Alderfer Family Farm thus generally denies all allegations in the Complaint.

(2)    Alderfer is an egg company headquartered and incorporated in Pennsylvania.

**ANSWER:**

2.    Admitted that Alderfer Poultry is an "egg company headquartered and incorporated in Pennsylvania."  Denied that Alderfer Family is an "egg company headquartered and incorporated in Pennsylvania."

(3)    According to Alderfer, the Company sources its eggs from a "home farm" run by the Alderfer family and from partner farms located throughout Pennsylvania.  The partner farmers are under contract to provide eggs to Alderfer, which Alderfer then packages and sells throughout New York and the United States.

**ANSWER:**

3.    Admitted that Alderfer Poultry sources its eggs from a home farm run by the Alderfer family and from partner farms located throughout Pennsylvania.  Denied that Alderfer Poultry eggs are sold throughout the United States.

(4)    Alderfer knows that consumers seek out and wish to purchase eggs laid by hens who have ample space to roam and outdoor access.  Alderfer knows that consumers will pay more for such eggs than they will for eggs laid by hens who do not have ample space to roam and outdoor access, or will buy more of such eggs than they will buy of eggs laid by hens who do not have ample space to roam and outdoor access.

**ANSWER:**

4.    Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of the complaint, and therefore denies them.

DM1\14982257.4

(5)    To capture this growing market of consumers who wish to purchase eggs from hens who have ample space to roam, the packaging on Alderfer's eggs states that the eggs are produced from "[c]age [f]ree," "Free Roaming" hens.

**ANSWER:**

5.    Denied.

(6)    These statements lead consumers to believe that Alderfer's eggs are laid by "Free Roaming" hens who have ample space to roam, which includes access to the outdoors and nature ground cover—e.g., grass and dirt.

**ANSWER:**

6.    Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 of the complaint, and therefore denies them.

(7)    Alderfer's "Free Roaming" claim is false, deceptive, and misleading.  In fact, hens in Alderfer's supply chain are kept in densely packed barns and do not have meaningful access to the outdoors or natural ground cover.  Hence, the hens do not have the ability to roam freely as understood by a reasonable consumer.

**ANSWER:**

7.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 7.

DM1\14982257.4

(8)     By deceiving consumers about the nature and quality of the Products, Alderfer is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profit.

**ANSWER:**

8.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that Alderfer Family sells Products, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 8, and they are therefore denied.

(9)     Consumers lack the information and knowledge necessary to determine whether Alderfer's eggs are sourced from hens who have outdoor access and ample space to roam or to know or ascertain the true quality and sourcing of the Products.

**ANSWER:**

9.     Defendants deny that Alderfer Family sells eggs, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 9, and they are therefore denied.

(10)     As a result of its false and misleading labeling and advertising, and omissions of fact, Alderfer was and is able to sell the Products to consumers in the State of New York and throughout the Northeastern United States and to realize sizeable profits.

**ANSWER:**

10.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 10.

(11)     During any applicable statute of limitations period (the "Class Period"), Plaintiff and members of the Class (described below) saw Alderfer's "Free Roaming" misrepresentations

when purchasing the Products.  Plaintiff and members of the Class (described below) paid more for the Products than they otherwise would have paid, and/or purchased the Products, or purchased more of the Products, than they would have if they had known the truth about Alderfer's treatment of egg-laying hens.  As a result, Plaintiff and Class Members suffered injury.

**ANSWER:**

11.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that Alderfer Family marketed or sold any Products, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 11, and they are therefore denied.

(12)    Therefore, Alderfer's marketing representations that its eggs are laid by "Free Roaming" hens are false, deceptive, and misleading in violation of New York's General Business Law ("GBL") Sections 349 and 350.

**ANSWER:**

12.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 12.

(13)    Because Alderfer's labeling and advertising of the Products tend to mislead and are materially deceptive about the true nature and quality of the Products, Plaintiff brings this deceptive advertising case on behalf of a proposed Class of consumers who purchased the Products in New York during the Class Period, and seeks relief including actual damages, interest, costs, and reasonable attorneys' fees.  Even today, members of the proposed Class are

DM1\14982257.4

purchasing the misrepresented Products, and they will continue to do so unless Alderfer's conduct is stopped.

**ANSWER:**

13.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that Alderfer Family labeled, advertised, or sold Products, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 13, and they are therefore denied.

## JURISDICTION AND VENUE

(14)     This Court has subject matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). There are at least 100 members in the proposed New York plaintiff class.

**ANSWER:**

14.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 14, and they are therefore denied.

(15)     Plaintiff is a citizen of New York. Plaintiff consents to this Court's jurisdiction over him by filing this complaint.

**ANSWER:**

15.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15, and they are therefore denied.

(16)     The Court has personal jurisdiction over Alderfer because the claims herein arise from Alderfer transacting business in New York. Alderfer has purposefully directed its

marketing practices to New York consumers, regularly conducts business in New York, distributes its Products throughout New York, and has availed itself of the benefits and protections of New York law, and it is therefore reasonable for Alderfer to anticipate being subject to an action in the courts of this District.

**ANSWER:**

16.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 16.

(17)    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) because substantial acts in furtherance of alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and quality of the Products at issue occurred within this District; and because Alderfer directs its marketing at consumers within New York, sells its eggs in New York, and has caused injury in New York.

**ANSWER:**

17.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 17.

## **PARTIES**

(18)    Defendants Alderfer Family Farm LLC and Alderfer Poultry Farm, Inc. are Pennsylvania corporate entities with their shared principal place of business in Telford, PA.

**ANSWER:**

18.    Admitted that Alderfer Poultry is a Pennsylvania corporation with its principal place of business in Telford, Pennsylvania.  Admitted that Alderfer Family Farm LLC is a limited liability company with its principal place of business in Telford, Pennsylvania.

7

(19)    Collectively, Defendants process, market, and distribute shell eggs to be sold to consumers throughout New York and the Northeast and Mid-Atlantic United States, including New York, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, Virginia, and Vermont. Defendants created and/or authorized the false and deceptive labeling of the Products.

**ANSWER:**

19.    Denied.

(20)    At all times mentioned herein, Plaintiff Spindel was and is an individual consumer over the age of 18. Within the Class Period, Plaintiff purchased Alderfer's Products labeled "Free Roaming," approximately monthly, on multiple occasions, from several retailers in the New York area, including the Orchards of Concklin Farmer's Market at 2 South Mountain Road, Pomona, NY 10970, and A Matter of Health at 138 Rockland Plaza, Nanuet, NY 10954.

**ANSWER:**

20.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20, and they are therefore denied.

(21)    In deciding to make his purchases, like other consumers, Spinel saw, relied upon, and reasonably believed Alderfer's "Free Roaming" representations.

**ANSWER:**

21.    Defendants deny that Alderfer Family made any representations, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21, and they are therefore denied.

DM1\14982257.4

(22)    Spindel continues to purchase egg products and plans to continue purchasing egg products in the future.

**ANSWER:**

22.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22, and they are therefore denied.

(23)    Members of the proposed class are currently purchasing, and will continue to purchase, Alderfer's Products, unaware that the "Free Roaming" representations are false.

**ANSWER:**

23.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that Alderfer Family sells Products, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 23, and they are therefore denied.

## FACT ALLEGATIONS

(24)    Every Alderfer Product carton lid contains the phrase "Free Roaming" or "Free Roaming Hens."

**ANSWER:**

24.    Denied.

(25)    As explained below, reasonable consumers interpret these phrases to mean that the hens who laid the eggs have a significant amount of space and outdoor access, including access to natural ground cover.

**ANSWER:**

25.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25, and they are therefore denied.

DM1\14982257.4

(26)    Many Alderfer eggs come from hens who have no access to the outdoors.

**ANSWER:**

26.    Denied.

(27)    As seen in the photos below of Alderfer facilities at 8838 State Route 44, Williamsport, PA, 17702, obtained through drone surveillance, other Alderfer eggs come from hens who have only minimal semi-outdoor access, namely a screened-in "porch" area that is too cramped to accommodate more than a small percentage of the hens at once.

**ANSWER:**

27.    Denied.

(28)    As seen in the above images, those Alderfer hens who have minimal access to the outdoors through access to the screened-in area porch are kept on mesh flooring and do not have any access to natural ground cover such as grass or dirt.

**ANSWER:**

28.    Denied.

(29)    Alderfer states on its website, "'Free-[R]oaming' refers to the fact that [its] hens are not in cages within the chicken house. [Its] hens are free to roam around inside the chicken house and produce what is called a '[c]age [f]ree' egg."

**ANSWER:**

29.    Admitted that this statement appeared on Alderfer Poultry's website only.  Denied as to Alderfer Family.

(30)    This information is intentionally omitted from Alderfer egg cartons in order to leave consumers who view only an Alderfer egg carton in the store, and not the website, unaware that the supposedly "Free Roaming" hens are actually kept inside.

**ANSWER:**

30.    Denied.

(31)    Alderfer hens, far from having room to roam, even when confined indoors, are densely packed into large barns.

**ANSWER:**

31.    Denied.

(32)    Inside these barns, the purportedly "Free Roaming" hens are allotted only 1.2-to-1.6 square feet of space per bird, according to Alderfer's website; this information is intentionally undisclosed on the cartons that consumers see in the store.

**ANSWER:**

32.    Denied.

(33)    Alderfer's partner farmer Nevin Ehst reported to the Pennsylvania State Conservation Commission that he has two 24,472 square foot barns, each of which holds 20,000 hens at a time, which equates to each hen having only 1.22 square feet of space per bird.

**ANSWER:**

33.    Defendants deny that Alderfer Family raises or partners with others to raise eggs, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33, and they are therefore denied.

(34)    Alderfer's partner farmer Jeff Rohrer reported to the Pennsylvania State Conservation Commission that he has a 53,865 square foot barn for 40,000 laying hens, equating to only 1.35 square feet of space per bird.

**ANSWER:**

DM1\14982257.4

34.    Defendants deny that Alderfer Family raises or partners with others to raise eggs, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34, and they are therefore denied.

(35)    As can be seen in the photo below from Alderfer facilities, the hens are clustered tightly together and not free to "roam."

**ANSWER:**

35.    Denied.

(36)    Some Alderfer egg cartons also contain the word "natural," despite the fact that the hens who laid Alderfer eggs were raised in crowded barns with little to no outdoor access instead of in natural conditions, which would include foraging outside in the grass and dirt.

**ANSWER:**

36.    Admitted that some Alderfer Poultry egg cartons contain the word "natural." Defendants deny the remainder of the allegations contained in Paragraph 36.

(37)    All or most Alderfer egg cartons also contain language indicating that the hens who laid Alderfer eggs were fed a "vegetarian diet."

**ANSWER:**

37.    Admitted that some Alderfer Poultry egg cartons indicate that the hens were fed a "vegetarian diet."  Defendants deny the remainder of the allegations contained in Paragraph 37.

(38)    Hens who have access to dirt or grass outdoors naturally forage for small animals like insects and worms to eat.

**ANSWER:**

38.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38, and they are therefore denied.

DM1\14982257.4

(39)    Most consumers lack sufficient knowledge about chicken behavior to know that hens who have access to dirt or grass outdoors naturally forage for small animals to eat.

**ANSWER:**

39.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39, and they are therefore denied.

(40)    If Alderfer hens have the opportunity to forage outside as consumers would expect from "Natural," "Free Roaming" chickens, they cannot truly have vegetarian diets.

**ANSWER:**

40.    Denied.

(41)    Contrary to Alderfer's representations on the labels of its eggs, the hens who lay Alderfer eggs are not "Free Roaming" as that term is understood by consumers.

**ANSWER:**

41.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that Alderfer Family labels eggs, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 41, and they are therefore denied.

(42)    According to a 2023 Dynata survey, commissioned by Animal Outlook surveying East Coast consumers of shell eggs, reasonable consumers believe that the use of the term "Free Roaming" on the label of eggs means that the hens who laid the eggs have continual access to the outdoors and natural ground cover, such as grass, hay, or dirt.

**ANSWER:**

42.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42, and they are therefore denied.

13

(43)    According to that same survey, 66% of consumers believe that eggs labeled "Free Roaming" are laid by hens who have continual access to the outdoors, and an additional 27% believe that eggs labeled "Free Roaming" are laid by hens who have access to the outdoors at least once a day.

**ANSWER:**

43.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43, and they are therefore denied.

(44)    The 2023 Dynata survey also found that 70% of consumers believe that eggs labeled "Free Roaming" are laid by hens who have continual access to natural ground cover, such as grass or dirt, and an additional 24% of consumers believe that eggs labeled "Free Roaming" are laid by hens who have access to natural ground cover at least once a day.

**ANSWER:**

44.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44, and they are therefore denied.

(45)    In the 2023 Dynata survey, when consumers were shown an image of the Alderfer egg carton with the "Free Roaming" claim in context and asked what "Free Roaming Hens" means, answers included, but were not limited to:

- "HENS CAN WALK AROUND OUTSIDE";
- "[T]he eggs were harvested from hens that are allowed to roam the farm";
- "[T]he hens are not boxed together in a [*sic*] overcrowded situation";
- "[The hens] are able to roam a large area and feed on natural habitat";
- "[The hens] are able to be outside and roam";
- "[The hens] are living and feeding in nature";
- "[The hens] can move about freely both indoors and outdoors";
- "[H]ens that are allowed to roam freely, having an expansive space to walk, roam freely on their own without restrictions;"
- "[The hens] have access to fresh air and can roam anywhere they feel";
- "[The hens] are able to move about in an outdoor area for foraging purposes;"

14

- "[The hens have] the ability to freely graze and roam in a wide open, natural area";
- "[H]ens are able to go freely wherever they want. They are able to graze out in a field of open space and [*sic*] not contained to just a hen house or small enclosure";
- "[C]hickens are outdoors and can be in a large unenclosed area. They are able to go and peck wherever they please outside" and
- "[The hens have] access to a large farmland with feed and natural light, and not caged with artificial feeding methods and run around outside on the property."

**ANSWER:**

45.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45, and they are therefore denied.

(46)    As described *supra*, paragraphs 27-28, some Alderfer hens have only minimal "outdoor access" via a screened-in porch.

**ANSWER:**

46.    Denied.

(47)    The 2023 Dynata survey found that, when shown the same images of Alderfer porches described *supra*, paragraphs 27-28, and asked "if egg-laying chickens had access to the structure shown, without any additional outdoor access, would you consider them to be 'Free Roaming' . . . why or why not?:" 82.3% of consumers did not consider chickens who have access to the porches to be "Free Roaming."

**ANSWER:**

47.    Defendants deny that there are any Alderfer Family porches, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 47, and they are therefore denied.

(48)    Alderfer intentionally sows confusion among consumers by using a 'Free Roaming' label, which reasonable consumers are likely to construe as equivalent to 'free-range,'

a known standard. Alderfer knows and intends that consumers will confuse its "Free Roaming" claim with a "free-range" claim.

**ANSWER:**

48.    Denied.

(49)    The United State Department of Agriculture states that "Free Roaming" is synonymous with terms like "free-range," "pasture raised," and "meadow raised," and requires that the bird had continual outdoor access throughout their growing cycle in order for poultry products (*i.e.*, poultry meat products) to bear those labels.

**ANSWER:**

49.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 49.

(50)    As described above, many hens who lay eggs for Alderfer are packed by the thousands into barns with only 1.2-to-1.6 square feet of space per bird.

**ANSWER:**

50.    Denied.

(51)    The 2023 Dynata survey found that, when shown the same image of Alderfer chickens included *supra*, paragraph 35, and asked "would you consider these chickens to be 'Free Roaming' . . . why or why not?:" 83.9% of consumers stated that they did not consider those chickens to be "Free Roaming."

**ANSWER:**

51.    Defendants deny that there are any Alderfer Family chickens, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 51, and they are therefore denied.

(52)     The 2023 Dynata survey also found that, for eggs labeled "Free Roaming," (1) 69% of consumers believe that the chickens who laid the eggs have enough space to move freely; (2) 57% of consumers believe that the chickens who laid the eggs are allocated more space than the size of a sheet of standard printer paper; (3) 70% believe the chickens who laid the eggs are not confined to an indoor barn for their entire lives; (4) 67% believe that the chickens who laid the eggs have enough space to express natural behaviors such as dust bathing, foraging, play, etc.; (5) 55% believe that all the chickens who laid the eggs can see and easily use a door to access the outdoors; and (6) 68% believe that the chickens who laid the eggs are treated more humanely than non-"Free Roaming" chickens.

**ANSWER:**

52.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52, and they are therefore denied.

(53)     The use of the term "natural" on some Alderfer egg cartons reinforces the idea that the hens who laid the Alderfer eggs had meaningful outdoor access.

**ANSWER:**

53.     Defendants deny that there are any Alderfer Family egg cartons, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 53, and they are therefore denied.

(54)     In the related context of chickens raised for meat, a 2015 national Consumer Reports survey found that 50% of United States consumers believe that poultry products labeled "natural" means that "the animals went outdoors."

**ANSWER:**

54.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54, and they are therefore denied.

(55)     The practices on Alderfer farms described *supra*, paragraphs 26–40, including allowing hens only minimal or no outdoor access and confining them densely indoors, do not meet a reasonable consumer's understanding of the term "Free Roaming," especially when combined with phrases like "cage free" or "natural."

**ANSWER:**

55.     Denied.

(56)     Alderfer's use of the term "Free Roaming" on its egg labels is misleading because Alderfer's actual practices do not match consumers' expectations of what this term means—*i.e.*, that the hens have space to roam unhindered and meaningful access to the outdoors and natural ground cover.

**ANSWER:**

56.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 56 are denied.

(57)     Alderfer's use of the term "Free Roaming" on the labels of its eggs is material to consumers who care about supporting humane animal farming practices and/or believe that eggs from hens with space to roam and outdoor access are of better quality.

**ANSWER:**

57.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that Alderfer Family labels eggs, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 57, and they are therefore denied.

DM1\14982257.4

(58)    These consumers are willing to, and do, pay more for eggs that come from hens whose care and treatment meet their understanding of "Free Roaming."

**ANSWER:**

58.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58, and they are therefore denied.

(59)    The 2023 Dynata survey of East Coast consumers found that when purchasing eggs, approximately 58% of consumers consider whether the chickens who laid the eggs are "cage free," 41% of consumers consider whether the chickens who laid the eggs have access to the outdoors, and 30% of consumers consider whether the chickens who laid the eggs have ample space to express natural behaviors.

**ANSWER:**

59.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59, and they are therefore denied.

(60)    The 2015 national survey published by Consumer Reports found that 84% of consumers say "providing better living conditions for animals" is a key objective when shopping for food.

**ANSWER:**

60.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60, and they are therefore denied.

(61)    Additionally, a 2022 national survey of grocery shoppers found that 68% of shoppers who had purchased eggs labeled "free-range," a term easily equated with "Free Roaming," did so because they thought it indicated improved animal welfare. Further, 57% of

purchasers reported that they paid more for eggs labeled "free-range" because "they believed [the] label indicated higher-welfare production practices."

**ANSWER:**

61.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61, and they are therefore denied.

(62)     The same survey found that 70% of shoppers who purchased eggs labeled "natural" did so "because they believed [the] label indicated higher-welfare production practices," and that 65% of consumers paid more for eggs so labeled "because they believed [the] label indicated higher-welfare production practices."

**ANSWER:**

62.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62, and they are therefore denied.

(63)     The lack of outdoor access can lead to increased stress and reduced activity in hens. In contrast, hens who do enjoy outdoor access suffer less feather damage and footpad dermatitis, and have a better digestive and gut function than that of hens kept indoors. Hens who spend more than five hours per day outdoors have better plumage, fewer comb wounds, shorter nail length, and higher spleen and gizzard weight – all positive indicators for animal welfare.

**ANSWER:**

63.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63, and they are therefore denied.

(64)     A recent survey by the Organic Trade Association found that the presence of "freerange," an analogous animal-raising claim, on a label makes 55% of consumers more likely to purchase the product, while an "all natural" label influences 60% of consumers."

**ANSWER:**

64.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64, and they are therefore denied.

(65)     Another study found that a majority of consumers surveyed were willing to pay an average of $0.16-$0.25 more per dozen eggs if the hens who laid them had outdoor access.

**ANSWER:**

65.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65, and they are therefore denied.

(66)     Consumers are willing to pay more for free-range eggs because they believe producing eggs this way confers benefits to themselves, as well as to the hens who laid the eggs.

**ANSWER:**

66.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66, and they are therefore denied.

(67)     Because Alderfer's "Free Roaming" claims, which Alderfer knows consumers will confuse with analogous "free-range" claims, influence reasonable consumers to buy Alderfer eggs, buy more Alderfer eggs, or spend more on Alderfer's eggs, despite the fact that its actual hen-raising practices do not meet a reasonable consumer's perceptions of what "Free Roaming" means, Alderfer's representations are material and misleading.

**ANSWER:**

67.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 67 are denied.

(68)     Alderfer's conduct in labeling and advertising the Products with the claim "Free Roaming" deceived and/or was likely to deceive the public. Consumers have been, and continue

to be, deceived into believing that the eggs are laid by hens who have ample space to roam and outdoor access, when in fact the eggs are laid by hens who do not have ample space to roam, and in some cases, never had out door access."

**ANSWER:**

68.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 68 are denied.

(69)    Consumers cannot discover the true nature of the Products from reading the label or Alderfer's advertising materials. Ordinary consumers do not have sufficient knowledge about the egg industry to learn how Alderfer's egg-laying hens are raised.

**ANSWER:**

69.    Denied as to the first sentence.  Defendants further deny that Alderfer Family has egg-laying hens, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 69, and they are therefore denied.

(70)    Alderfer deceptively and misleadingly conceals material facts about the Products, namely, that the Products are sourced from egg-laying hens who do not have ample space to roam, that the hens do not have ample space to express natural behaviors, that many of the hens are confined to barns for the entirety of their lives and will never see the outdoors, and that, even if some of the hens do have "outdoor access," such access is limited to a small, screened-in porch, which does not provide access to natural ground cover.

**ANSWER:**

70.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 70 are denied.

(71)    Alderfer knew what representations it made on the labels and advertising of the Products. It also knew how the Products were sourced and produced. Alderfer thus knew, or should have known, the facts demonstrating that the Products were falsely advertised.

**ANSWER:**

71.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, admitted that Alderfer Poultry "knew what representations it made on the labels and advertising of the Products" and "knew how the Products were sourced and produced."  Defendants deny the remainder of the allegations contained in Paragraph 71.

(72)    To this day, Alderfer continues to conceal the true nature, identity, sources, and methods of production of the Products.

**ANSWER:**

72.    Denied.

(73)    Alderfer's concealment tolls the statute of limitations.

**ANSWER:**

73.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegation in Paragraph 73 is denied.

(74)    In making the false, misleading, and deceptive representations and omissions at issue, Alderfer also knew and intended that consumers would choose to buy, and would pay more for, products promoted with the claim "Free Roaming," furthering Alderfer's private

interest in increasing sales of its products and decreasing the sales of its competitors' products that are truthfully marketed.

**ANSWER:**

74.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 74 are denied.

(75)    Had Alderfer not made the false, misleading, and deceptive representations and omissions at issue, Plaintiff and the class members would not have been willing to pay the same amount for the Products they purchased, would have chosen competing products, and/or would not have purchased as much of the Products.

**ANSWER:**

75.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that they made "false, misleading, and deceptive representations and omissions."  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75, and they are therefore denied.

(76)    Alderfer's ongoing false and misleading labeling and advertising of the Products continues to cause harm to Plaintiff and the consumers he seeks to represent.

**ANSWER:**

76.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 76 are denied.

DM1\14982257.4

(77)    Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold using false and misleading labeling and advertising.

**ANSWER:**

77.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 77 are denied.

## CLASS ALLEGATIONS

(78)    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

**ANSWER:**

78.    Defendants repeat and re-allege each and every response in this Answer contained in Paragraphs 1-77 above as if fully set forth herein.

(79)    This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

**ANSWER:**

79.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, the allegations in Paragraph 79 are denied.

(80)    The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all consumers who purchased

DM1\14982257.4

Alderfer's Products (as defined herein) within the State of New York during the Class Period (the "Class").

**ANSWER:**

80.    Admitted that Plaintiff attempts to "bring[] this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all consumers who purchased Alderfer's Products … within the State of New York during the Class Period."  The remainder of the allegations in this Paragraph state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 80.

(81)    Excluded from the Class are (1) Defendants, any entity or division in which a Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

**ANSWER:**

81.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 81.

(82)    Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

**ANSWER:**

82.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 82.

DM1\14982257.4

(83)    Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

**ANSWER:**

83.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 83.

(84)    All members of the Class were and are similarly affected by the deceptive labeling and advertising of Alderfer's Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

**ANSWER:**

84.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 84.

(85)    At this time, Plaintiff does not know the exact number of the Class members. Based on the wide distribution of Alderfer's Products, Plaintiff believes that the Class comprises many thousands of consumers. The number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**ANSWER:**

85.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 85.

(86)    There is a well-defined community of interest in the questions of law and fact in this case. Questions of law and fact common to the members of the Class that predominate over

27

questions that may affect individual class members include: (a) Whether Defendants are responsible for the labeling and advertising at issue; (b) Whether the labeling and advertising of the Products was unfair, false, deceptive, fraudulent, and/or unlawful; (c) Whether the labeling and advertising of the Products is likely to mislead a reasonable consumer; (d) What reasonable consumers understand a "Free Roaming" claim to convey about the treatment of the hens who laid the Alderfer eggs; and (e) Whether Alderfer's conduct, as set forth above, injured Plaintiff and Class members.

**ANSWER:**

86.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 86.

(87)    Plaintiff's claims are typical of those of the Class, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class is common to all the Class members. Plaintiff, like all Class members, relied on Defendants' false and misleading representations and purchased Alderfer's Products, or purchased more of them, or paid more for the Products than he would have paid if the Products had been properly labeled, and sustained injury from Alderfer's wrongful conduct. Further, there are no defenses available to Defendants that are unique to Plaintiff.

**ANSWER:**

87.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 87.

(88)    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, and he has retained counsel competent and experienced in

both consumer protection and class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel have represented consumers in a variety of actions seeking to protect consumers from fraudulent and deceptive practices.

**ANSWER:**

88.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 88.

(89)    The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicated this controversy.

**ANSWER:**

89.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 89.

(90)    Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

**ANSWER:**

90.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 90.

(91)    Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or

impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in a manner that is most efficient and economical for the parties and the judicial system.

**ANSWER:**

91.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 91.

(92)    Plaintiff is unaware of any difficulties in managing this case that would preclude proceeding as a class action.

**ANSWER:**

92.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92, and they are therefore denied.

(93)    Certification is also appropriate under Rule 23(b)(3) because Defendants acted, or refused to act, on grounds generally applicable to the Class.

**ANSWER:**

93.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 93.

(94)    Further, given the large number of consumers of Alderfer's Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**ANSWER:**

94.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 94.

DM1\14982257.4

<u>**COUNT I**</u>
<u>**Violation of New York General Business Law Section (On Behalf of Plaintiffs and All Class Members)**</u>

(95)    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER:**

95.    Defendants repeat and re-allege each and every response in this Answer contained in Paragraphs 1-94 above as if fully set forth herein.

(96)    The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

**ANSWER:**

96.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 96.

(97)    Alderfer has marketed the Products with the phrase "Free Roaming" when, in fact, hens in Alderfer's supply chain are kept in densely packed barns and do not all have meaningful access to the outdoors or natural ground cover.

**ANSWER:**

97.    Denied.

(98)    Alderfer has violated, and continues to violate, Section 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate cause of Alderfer's violation of Section 349, Plaintiff and other members of the Class have suffered damages in an amount to be determined at trial.

**ANSWER:**

98.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 98.

(99)     Alderfer's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class members to purchase and to pay the requested price of the Products when they otherwise would not have, or would not have purchased as much.

**ANSWER:**

99.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 99.

(100)     Alderfer knew what representations it made on the labels and advertising of the Products. It also knew how the Products were sourced and produced. Alderfer thus knew, or should have known, the facts demonstrating that the Products were falsely advertised.

**ANSWER:**

100.     Admitted that Alderfer Poultry "knew what representations it made on the labels and advertising of the Products" and "knew how the Products were sources and produced." Defendants deny the remainder of the allegations in Paragraph 100.

(101)     Defendants thus made the misleading statement and representations willfully, wantonly, and with reckless disregard for the truth.

**ANSWER:**

101.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 101.

(102)     Plaintiff and the Class members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they

selected over other products that may have been truthfully marketed.

**ANSWER:**

102.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 102.

(103)   Alderfer's advertising and the Products' packaging and labeling induced Plaintiff and the Class members to buy the Products, to buy more of the Products, and/or to pay the price requested for those Products.

**ANSWER:**

103.    Defendants deny that Alderfer Family advertised, packaged, or labeled Products, and are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 103, and they are therefore denied.

(104)   As a direct and proximate cause of Alderfer's violation of Section 349, Plaintiff and other members of the Class paid for falsely advertised Products, and, as such, have suffered damages in an amount to be determined at trial.

**ANSWER:**

104.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 104.

(105)   Therefore, Alderfer is liable to Plaintiff and the other members of the Class for actual damages or fifty dollars ($50) for each purchase of an Alderfer Product (whichever is greater), attorneys' fees, and the costs of this suit. The Court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $1000, based on

Alderfer's willful and knowing violation of Section 349.

**ANSWER:**

105.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 105.

(106)   In addition, Alderfer continues engaging in the deceptive conduct, and, upon information and belief, will continue to do so. Members of the Class that Plaintiff seeks to represent are purchasing, and will continue to purchase, the misrepresented Products.

**ANSWER:**

106.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 106.

(107)   The unfair and deceptive acts and practices of Alderfer, as described above, present an ongoing threat to Plaintiff and the other members of the Class.

**ANSWER:**

107.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 107.

## <u>COUNT II</u>

### <u>Violation of the New York General Business Law Section 350 (On Behalf of Plaintiff and All Class Members)</u>

(108)   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER:**

108.    Defendants repeat and re-allege each and every response in this Answer contained in Paragraphs 1-107 above as if fully set forth herein.

(109)   The acts of Defendants, as described above, and each of them, constitute

34

unlawful, deceptive, and fraudulent business acts and practices.

**ANSWER:**

109.     This Paragraph states a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the allegations of Paragraph 109.

(110)   New York General Business Law Section 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

**ANSWER:**

110.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 110.

(111)   GBL Section 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

**ANSWER:**

111.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 111.

(112)   Plaintiff and the members of the Class are consumers who purchased Alderfer's Products in the State of New York.

**ANSWER:**

112.     This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 112.

(113)   As a seller of good to the consuming public Alderfer is engaged in the conduct of

business, trade, or commerce within the meaning of GBL Section 350.

**ANSWER:**

113.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 113.

(114)   Alderfer's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Alderfer's advertising fails to reveal material facts with respect to its Products, as described above, constitute false advertising in violation of the New York General Business Law.

**ANSWER:**

114.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 114.

(115)   Alderfer's false advertising was knowing and intentional.

**ANSWER:**

115.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 115.

(116)   Alderfer's actions led to direct, foreseeable, and proximate injury to Plaintiff and members of the Class.

**ANSWER:**

116.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 116.

(117)   As a consequence of Alderfer's deceptive marketing scheme, Plaintiff and the other members of the Class suffered an ascertainable loss, insofar as they would not have purchased the Products had they known the truth, would not have paid the price requested for the

Products, and/or would have purchased fewer of the Products; moreover, as a result of Alderfer's conduct, Plaintiff and the other members of the Class received Products of less value than what they paid for.

**ANSWER:**

117.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 117.

(118)   By reason of the foregoing, Alderfer is liable to Plaintiff and the other members of the Class for actual damages or five hundred dollars ($500) for each sale of a Product (whichever is greater), attorneys' fees, and the costs of this suit. The Court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $10,000, based on Alderfer's willful and knowing violation of GBL Section 350.

**ANSWER:**

118.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 118.

(119)   In addition, Alderfer continues engaging in deceptive conduct, and, upon information and belief, will continue to do so. Members of the Class that Plaintiff seeks to represent are purchasing, and will continue to purchase, the misrepresented products.

**ANSWER:**

119.    This Paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 119.

## AFFIRMATIVE DEFENSES

Defendants assert the following Affirmative Defenses without assuming the burden of proof on such defenses that would otherwise rest with Plaintiff.

### First Affirmative Defense

Plaintiff fails to allege facts sufficient to support judgment or a finding of liability against Defendants and, therefore, the Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

The allegations in the Complaint are time-barred by the applicable statute of limitations.

### Third Affirmative Defense

The allegations in the Complaint are pre-empted by the Eggs Product Inspection Act, 21 U.S.C. 1031, *et seq.*, as well as other applicable federal statutes and/or regulations.

### Fourth Affirmative Defense

The claims should be dismissed in accordance with the doctrine of primary jurisdiction.

### Fifth Affirmative Defense

The allegations in the Complaint are barred, in whole or in part, by the doctrine of assumption of risk.

### Sixth Affirmative Defense

To the extent Plaintiff has suffered any damages for which the law would provide a remedy, which Defendants deny, Plaintiff's damages must be reduced as a result of Plaintiff's failure to mitigate damages.

### Seventh Affirmative Defense

To the extent Plaintiff has suffered any damages for which the law would provide a remedy, which Defendants deny, Plaintiff is not entitled to any award of damages or attorney's

fees.

## **Eighth Affirmative Defense**

Defendants have yet to avail themselves of their right to discovery, and therefore do not fully know the circumstances alleged in Plaintiff's Complaint. Defendants hereby notify Plaintiff that, until Defendants can avail themselves of their right to discovery, it cannot be determined whether or not Defendants will assert the above-stated affirmative defenses, or others, at trial, or whether those will be the only such defenses asserted. Such defenses, however, are asserted in Defendants' Answer to provide Plaintiff with notice of Defendants' intention to assert such defenses and to avoid any issue of waiver of any such defenses. Additionally, Defendants reserve the right to assert additional defenses as the course of discovery and investigation progresses.

DM1\14982257.4

## PRAYER FOR RELIEF

**WHEREFORE,** Defendants Alderfer Family Farm LLC and Alderfer Poultry Farm, Inc. respectfully request that this Court enter judgment against Plaintiff as follows:

(a)    Dismissing the Complaint against Defendants in its entirety and with prejudice and accordingly denying Plaintiff's request for any sort of damages, costs, or attorney's fees;

(b)    Denying Plaintiff's request for Class Certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1)-(3);

(c)    Denying Plaintiff's request to appoint Plaintiff as the representative of the Proposed Class and request to appoint Plaintiff's counsel as Class counsel during the pendency of this suit;

(d)    Denying Plaintiff's request for a declaration that Defendants are financially responsible for notifying members of the Class of the pendency of this suit;

(e)    Denying Plaintiff's request for an order requiring an accounting for an imposition of a constructive trust; and

(f)    Such other and further relief as this Court deems just and proper.

Dated: February 22, 2024                     Respectfully submitted,

                                             *s/ Matthew M. Caminiti*
                                             Matthew M. Caminiti, Esq.
                                             Rebecca E. Bazan, Esq. (*pro hac vice*
                                             motion forthcoming)
                                             Michelle C. Pardo, Esq. (*pro hac vice*
                                             motion forthcoming)
                                             1540 Broadway
                                             New York, NY 10036
                                             T: (212) 692-1000
                                             E: MMCaminiti@duanemorris.com

                                             *Attorneys for Defendants*

DM1\14982257.4

*Alderfer Family Farm LLC and*
*Alderfer Poultry Farm, Inc.*

DM1\14982257.4