## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFERY SPINDEL, on behalf of himself and all others similarly situated,<br><br>                    *Plaintiff*,<br><br>          v.<br><br><br>ALDERFER FAMILY FARM LLC, *et al.*,<br><br>                    *Defendants*. | Case No. 7:23-cv-10710-PMH<br><br>District Judge Philip M. Halpern<br>Magistrate Judge Judith C. McCarthy |

**PLAINTIFF'S MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, APPOINTMENT OF JEFFREY SPINDEL AS CLASS REPRESENTATIVE, APPOINTMENT OF RICHMAN LAW & POLICY AS CLASS COUNSEL, <u>AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## **TABLE OF CONTENTS**

FACTS .................................................................................................................................... 3

  I.    Background and Procedural History ................................................................ 3

  II.   The Settlement's Terms ................................................................................... 5

     A.   The Settlement's Benefits for the Class ................................................. 5

       1.   Monetary Relief ................................................................................. 5

          a.   Class Notice and Administration Costs .................................. 6

          b.   Incentive Awards and Attorneys' Fees and Costs ................. 7

          c.   Payment of Class Members' Claims ....................................... 7

       2.   Labeling and Marketing Changes ..................................................... 8

     B.   The Settlement's Class Release ............................................................. 9

     C.   Procedures for Opting Out or Objecting ............................................... 9

ARGUMENT ...................................................................................................................... 10

  I.    Certification of the Nationwide Settlement Class ....................................... 10

     A.   The Numerosity Requirement of Rule 23(a)(1) ................................... 11

     B.   The Commonality Requirement of Rule 23(a)(2) ............................... 11

     C.   The Typicality Requirement of Rule 23(a)(3) ..................................... 12

     D.   The Adequacy Requirement of Rule 23(a)(4) ..................................... 12

     E.   Predominance of Common Questions of Law or Fact per Rule 23(b)(3) ............................ 13

     F.   Superiority of a Class Action for Adjudicating This Controversy ....................................... 14

  II.   Preliminarily Approval Under Rule 23(b)(2) ............................................... 15

     A.   Adequate Representation of Class Representative and Class Counsel ................................ 15

     B.   Arms'-Length, Informed Negotiations ................................................. 15

     C.   Adequacy of Relief Provided ............................................................... 16

     D.   Equal Treatment of Class Members ..................................................... 18

     E.   Balance of the *Grinnell* Factors .......................................................... 19

CONCLUSION ................................................................................................................... 21

i

# TABLE OF AUTHORITIES

## Cases

*Animal Outlook v. Alderfer Family Farm LLC et al.*, No. 2023-CAB-007338 (D.C. Super. Ct.)............
........................................................................................................................................... passim

*Azogue v. 16 for 8 Hospitality LLC*, No. 13-CV-7899 (TPG), 2016 U.S. Dist. LEXIS 202704 (S.D.N.Y. Feb. 8, 2016)........................................................................................................................... 10

*Catholic Health Care West v. US Foodserv.*, 729 F.3d 108 (2d Cir. 2013)........................................ 13

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)......................................................... passim

*Elisa W. v. City of New York*, 82 F.4th 115 (2d Cir. 2023) ............................................................ 11, 12

*Gomez v. Lace Entm't, Inc.*, No. 15 Civ. 3326 (CM), 2017 U.S. Dist. LEXIS 5770 (S.D.N.Y. Jan. 6, 2017)................................................................................................................................ 12, 13

*Grissom v. Sterling Infosystems, Inc.*, No. 20-CV-7048 (VSB), 2024 U.S. Dist. LEXIS 197927 (S.D.N.Y. Oct. 30, 2024)............................................................................................................ passim

*Hesse v. Godiva Chocolatier*, No. 1:19-cv-0972-LAP, 2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022).............................................................................................................................. 19, 21

*In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171 (S.D.N.Y. 2014) (McMahon, J.) .... 17

*In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199 (S.D.N.Y. 2022) (Daniels, J.) ...................................... 14

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) (Rakoff, J.) ......................... 16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009)........................................................................................................... 11

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015) (Briccitti, J.).......................... 14

*In re SSA Bonds Antitrust Litig.*, No. 1:16-cv-03711-ER, 2021 U.S. Dist. LEXIS 73848 (S.D.N.Y. Apr. 2, 2021)............................................................................................................................... 10

*Ji Dong Cheng v. HSBC Bank USA, N.A.*, No. 23-7383, 2024 U.S. App. LEXIS 29455 (2d Cir. Nov. 20, 2024)............................................................................................................................... 12

*Johnson v. Nextel Communs. Inc.*, 780 F.3d 128 (2d Cir. 2015) ................................................... 11, 12

*Kurtz v. Costco Wholesale Corp.*, 818 Fed. Appx. 57 (2d Cir. 2020).......................................... 10, 13

*Kurtz v. Kimberly-Clark Corp.*, Nos. 14-CV-1142 & 15-CV-2910, 2024 U.S. Dist. LEXIS 8711 (E.D.N.Y. Jan. 17, 2024)............................................................................................................ 18

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242 (2d Cir. 2011) 12

*Long v. Stellantis N.V.*, No. 24 Civ. 6196 (JHR) (GS), 2024 U.S. Dist. LEXIS 233663 (S.D.N.Y. Dec. 30, 2024)............................................................................................................................... 12

*Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB), 2024 U.S. Dist. LEXIS 10892 (S.D.N.Y. Jan. 22, 2024) ................................................................................................................. 19, 20, 21

*Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349, 2021 U.S. Dist. LEXIS 66719 (E.D.N.Y. Jan. 6, 2021)....................................................................................................................................... 18

*Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023)................................................................ 15, 19

*Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020)................................................................... 19

*Set Cap. LLC v. Credit Suisse Grp. AG*, No. 18-Civ-2268 (AT), 2025 U.S. Dist. LEXIS 24911 (S.D.N.Y. Feb. 11, 2025)........................................................................................................................... 11

*Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431 (AT), 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023)....................................................................................................................................... 14

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-CV-3538 (VSB), 2023 U.S. Dist. LEXIS 95908 (S.D.N.Y. Jun. 1, 2023) ................................................................................... 10, 20

*Suarez v. Rosa Mexicano Brands, Inc.*, No. 1:16-cv-5464 (GWG), 2018 U.S. Dist. LEXIS 63562 (S.D.N.Y. Apr. 13, 2018) ............................................................................................................ 18

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) ................................................... 14

ii

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................ 11
*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)................................. 10
*Woods v. Fitzcon Constr./Ren Corp.*, No. 20 Civ. 8088 (ALC) (SLC), 2022 U.S. Dist. LEXIS 207464
    (S.D.N.Y. Nov. 14, 2022) .................................................................................................. 16

## Statutes

D.C. Code § 28-3905(k)(1) ........................................................................................................ 3
District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901–13 ......... 3
N.Y. Gen. Bus. Law § 349 ........................................................................................................ 1
N.Y. Gen. Bus. Law § 350 .................................................................................................... 1, 3

## Rules

Fed. R. Civ. P. 23 ............................................................................................................. passim
Fed. R. Civ. P. 23(3)(1) .......................................................................................................... 10
Fed. R. Civ. P. 23(a) ................................................................................................... 10, 11, 12
Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 10, 13
Fed. R. Civ. P. 23(e) ......................................................................................................... passim
Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 15, 16
Fed. R. Civ. P. 26 ..................................................................................................................... 4
Fed. R. Civ. P. 30(b)(6) ............................................................................................................ 3
Fed. R. Civ. P. 33 ..................................................................................................................... 4
Fed. R. Civ. P. 34 ..................................................................................................................... 4
Fed. R. Civ. P. 35 ..................................................................................................................... 4
Fed. R. Civ. P. 36 ..................................................................................................................... 4

## Treatises

Brian T. Fitzpatrick, *The End of Objector Blackmail?* 62 Vand. L. Rev. 1623 (2009) ...................... 18
W. Rubenstein, *Newberg on Class Actions* § 13 (5th ed. 2011) ........................................ 10, 11
W. Rubenstein, *Newberg on Class Actions* § 4 (5th ed. 2014) ............................................. 14

With Defendants ALDERFER FAMILY FARM, LLC'S, and ALDERFER POULTRY FARM, INC.'S ("Alderfer's") consent, Plaintiff Jeffrey Spindel moves for certification of the class for settlement purposes, his appointment as Class Representative, appointment of his attorneys Richman Law & Policy as Class Counsel, and preliminary approval of a proposed nationwide Settlement Agreement.[1]

In this consumer fraud action, Plaintiff alleges that Alderfer advertised certain shell egg Products[2] with representations that the eggs were sourced from "Free Roaming" hens. Plaintiff alleges that these representations were false and/or misleading because some Alderfer hens have access to only 1.2-to-1.6 square feet of indoor space per bird and no or minimal outdoor access. Therefore, Plaintiff's complaint alleges, Alderfer has violated New York General Business Laws Sections 349 and 350.

This proposed Settlement Agreement follows more than a year of litigation in this District. It also follows more than a year of litigation of a related action in the District of Columbia Superior Court, *Animal Outlook v. Alderfer Family Farm LLC et al.*, No. 2023-CAB-007338 (D.C. Super. Ct.), in which a nonprofit public interest organization, also represented by Class Counsel here, alleged misrepresentation aimed at consumers. After several months of extensive, arms'-length negotiations, the Parties met in a June 26, 2024, settlement conference before the Honorable Magistrate Judge Judith C. McCarthy, resulting in an agreement in principle to resolve both cases. Over the next six months, the Parties further refined, finalized, and recorded that agreement in the

---

[1] The Settlement Agreement is filed as **Exhibit A** to this Memorandum. All capitalized terms herein have the meaning specified in the Settlement Agreement.

[2] Those Products are Extra Large, Grade A Brown Eggs, Certified Humane, Natural, Cage Free (paper carton); Large, Grade A Brown Eggs, Certified Humane, Natural, Cage Free (paper carton); Large, Grade A Eggs, Natural, Cage Free (paper carton); Large, Grade A White Eggs, Omega, Cage Free (paper carton); Jumbo, Grade A Brown Eggs, Cage Free (plastic carton); Large, Grade A Brown Eggs, Certified Humane, Cage Free (plastic carton); Large, Grade A Eggs, Cage Free, 18-count (plastic carton); Medium, Grade A Brown Eggs, Cage Free (plastic carton); Large, Grade A White Eggs, Omega, Cage Free (plastic carton); Large, Grade A Brown Eggs, Certified Humane, Cage Free, 6-count (plastic carton); and Large, Grown Eggs, Cage Free (paper carton).

1

Settlement Agreement.[3]

This is a fair settlement for the Class,[4] providing for robust Class Notice, permitting Class Members to claim monetary refunds, and resulting in marketing changes addressing the challenged representations. The Settlement Agreement provides for a robust and thorough Class Notice, and affected consumers will be compensated out of a $287,500.00 Common Fund that Alderfer agrees to establish. Consumers with Authorized Claims can receive standardized payments of $2.00 for each carton of the Products purchased during the Class Period, defined as December 1, 2020, through the Effective Date of the Settlement Agreement.[5] Should the funds not be exhausted after payments of Authorized Claims and all other costs, the remaining funds will be distributed as *cy pres* to Animal Outlook, a consumer advocacy organization and the plaintiff in the *Animal Outlook* matter in District of Columbia Superior Court, to be used for educating consumers about prevailing conditions in the egg industry generally.

Importantly, the Settlement Agreement provides that Alderfer will make extensive marketing changes to avoid consumer confusion: (1) stop shipping Products with packaging or labeling that bears the "Free Roaming" language[6]; (2) remove any remaining "Free Roaming" language from (i) its Product webpages/website and (ii) any other Product Marketing no later than 14 days from the Effective Date of the Settlement Agreement; and (3) discontinue and not reinstate for at least 36 months the "Free Roaming" language (i) on Product packaging and labeling, (ii) on Product webpages/websites, and (iii) in any other Product Marketing. The Settlement Agreement,

---

[3] Animal Outlook and Alderfer have also entered into a settlement agreement as of March 10, 2025. That agreement provides for marketing changes identical to those negotiated here and is premised on the final approval of the Settlement Agreement in this case.

[4] The Class is defined as all Persons in the United States who, during the Class Period (December 1, 2020, through the Effective Date), purchased in the United States, for personal or household use and not for resale or distribution, Alderfer Poultry Farm, Inc. Products. Any Person who previously received a full refund is excluded.

[5] Consumers presenting Claims based on reasonable proof of purchase are entitled to unlimited recovery. Consumers with Claims based on a declaration signed under penalty of perjury, without reasonable proof of purchase, are limited to a maximum of two cartons of Products.

[6] This relief came into effect as of April 12, 2024, almost a year ago, for the benefit of consumers.

if approved, will therefore benefit not just Class Members but the public as well. Accordingly, preliminary approval is appropriate.

## FACTS

### I.    Background and Procedural History

The Complaint, filed December 8, 2023, alleged claims arising from representations on the Products that they came from "Free Roaming" hens.[7] Plaintiff Jeffrey Spindel, a resident of New York, initially sought to represent a class of all consumers who purchased the Products within the State of New York during the Class Period. The Complaint alleges that, contrary to the impression created by the "Free Roaming" representation, the Products come from hens who have no outdoor access or minimal semi-outdoor access. (Compl. ¶¶ 26-27.) Those hens with semi-outdoor access, the Complaint alleges, are able to reach that area only by standing on mesh wire in an elevated porch, with no access to grass or dirt. (*Id.* ¶ 28). Moreover, the hens are densely confined to barns with only 1.2-to-1.6 square feet of space per hen. (*Id.* ¶¶ 32-34.) Based on these allegations of fact, Plaintiff Spindel contends that Alderfer's hens are not "Free Roaming" as consumers understand that term, meaning that Alderfer's marketing violates Sections 349 and 350 of New York General Business Law. (*Id.* ¶¶ 41-55, 95-119.) The Complaint seeks damages, restitution, and declaratory relief on behalf of the affected Class. (*Id.* ¶ 95-119.)

Alderfer answered the Complaint on February 2, 2024, and Plaintiff Spindel commenced discovery.[8] On April 4, 2024, Plaintiff Spindel served Alderfer with Rule 30(b)(6) notices of

---

[7] Plaintiff initially filed an identical complaint in the Eastern District of New York on December 1, 2023. Plaintiff subsequently withdrew that complaint on December 4, 2023. Also on December 1, 2023, Animal Outlook, a nonprofit public interest organization represented by Class Counsel, filed an action based on the same allegedly misleading statements in the Superior Court of the District of Columbia. *See Animal Outlook v. Alderfer Family Farm LLC et al.*, No. 2023-CAB-007338 (D.C. Super. Ct.). That action seeks declaratory and injunctive relief on behalf of consumers for violation of the District of Columbia Consumer Protection Procedures Act, as specifically authorized by D.C. Code § 28-3905(k)(1).

[8] Similar discovery was issued by the public interest plaintiff in *Animal Outlook v. Alderfer Family Farm LLC et al.*, No. 2023-CAB-007338 (D.C. Super. Ct.), during this timeframe.

deposition. On April 22, 2024, Plaintiff Spindel and Alderfer exchanged initial disclosures pursuant to Rule 26. On April 23, 2024, pursuant to Rules 26 and 33 through 36, Plaintiff Spindel served requests for production of documents, interrogatories, and requests for admission.[9]

While discovery was ongoing, the Parties engaged in arms'-length settlement discussions, beginning with Alderfer's January 16, 2024 proposal. Plaintiff responded in a letter dated February 7, 2024, to which Alderfer responded on April 26, 2024. On June 26, 2024, the parties attended a settlement conference facilitated by Magistrate Judge Judith C. McCarthy and reached an agreement in principle. The timeline of additional activity and negotiations is as follows[10]:

- July 10, 2024: Plaintiff began contacting potential claims administrators, all of whom indicated that additional information regarding sales reach was necessary to determine the scope of notice and administration.

- July 12, 2024: The parties met to discuss what additional information was needed to secure a claims administrator, and Alderfer agreed to provide that additional information.

- July 15, 2024: Plaintiff sent a proposed Settlement Agreement to Alderfer for review.

- August 2, 2024: Alderfer returned the proposed Settlement Agreement with revisions.

- August 9, 2024: The parties met to discuss additional information needed from Alderfer to proceed with selecting a claims administrator.

- August 13, 2024: Alderfer supplied the information requested by potential claims administrators, which Plaintiff then provided to the potential claims administrators and began receiving bids on claims administration.

- September 23, 2024: Plaintiff proposed additional revisions to the draft Settlement

---

[9] Due to ongoing settlement negotiations, this Court ordered a temporary stay of discovery on July 23, 2024.

[10] These activities are detailed in the Declaration of P. Renée Wicklund, filed as **Exhibit B** to this Memorandum.

Agreement.

- September 25, 2024: The parties met to discuss updates in claims administration.

- November 4, 2024: Alderfer responded to Plaintiff's revisions to the proposed Settlement Agreement.

- December 4, 2024: Plaintiff provided Alderfer with an update on the plans for claims administration and with a near-final draft of the Settlement Agreement.

- January 9, 2025: The Parties met to resolve the last remaining issues with the Settlement Agreement and began the process of approval.

- February 10, 2025: The Parties notified this Court that they had agreed to the terms of the Settlement Agreement.

- February 24, 2025: The Parties executed the Settlement Agreement.

## II.    The Settlement's Terms

The Settlement is entered into on behalf of all consumers who, during the Class Period, purchased in the United States, for personal or household use and not for resale or distribution, Alderfer Poultry Farm, Inc. Products. (Settlement Agreement (Ex. A) Definitions ¶ 13.) Any person who previously received a full refund is excluded from the Class definition. (*Id.*)

### A.    The Settlement's Benefits for the Class

As noted, the Settlement Agreement provides for multiple benefits for the Class, including a $287,500.00 Common Fund for payments of Authorized Claims, robust Class Notice, and extensive changes to Alderfer's marketing representations.

#### 1.    Monetary Relief

Alderfer will place $287,500.00 in a Common Fund in two separate payments of $143,750.00, one to be made ten days from Preliminary Approval and the other to be made on the Effective Date of the Settlement Agreement. (Settlement Agreement (Ex. A) Terms ¶ 4(a).) The

Common Fund will cover all expenses associated with the Settlement Agreement and approved by the Court, including Class Notice, Claims Administration Expenses, Class Member Claims, the service award to the Class Representative, and Class Counsel's Fees as approved by the Court. (*Id.* ¶ 4(b).) Interest on the Common Fund will inure to the benefit of the Class. (*Id.*)

### a.    Class Notice and Administration Costs

The Parties have agreed to hire Simpluris as the Claims Administrator in this matter and seek the Court's approval to do so. Simpluris will effect Class Notice and administration, including—

- arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties, as approved by the Court;

- answering written inquiries from Class Members and/or forwarding such inquiries to Class Counsel;

- receiving and maintaining Opt-Out Forms of Class Members who wish to opt out of and be excluded from the Agreement;

- establishing a Settlement Website;

- establishing and staffing a toll-free informational telephone number for Class Members;

- receiving and processing Claims and distributing payments to Authorized Claimants; and

- otherwise assisting with administration of the Agreement.

(*Id.* ¶ 8.) Class Notice is to be tailored to target users who purchase organic foods in the seven states that each accounted for more than 1 percent of the Product sales in the past year: Florida, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, and Virginia. Simpluris estimates that the target audience of potential claimants comprises approximately 18 million people. The Notice Plan is designed to reach 70 percent of those potential claimants over a 30-day period. It will

accomplish this in three ways. First, Simpluris will place advertisements on Facebook and Instagram targeting users in those states interested in buying organic foods, and then target similar audiences using those platforms, based data it collects about visitors to the Settlement Website. Second, Simpluris will place banner ads targeting people in those states interested in buying organic food. Finally, Simpluris will release a 700-word press release to the target states.[11]

### b. Incentive Awards and Attorneys' Fees and Costs

Class Counsel and the Class Representative will request attorneys' fees and costs, and a service award to Plaintiff Jeffrey Spindel and Class Counsel's Fees, to be paid from the Common Fund. Class Counsel's request for fees will not exceed 30 percent of the Settlement Payment. Plaintiff Jeffrey Spindel, who has been actively involved throughout this litigation,[12] will request a service award of no more than $5,000 for his willingness to bring this Action and represent the interests of Class Members. (Settlement Agreement (Ex. A) Terms ¶ 6(a).) The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of the Action, as well as the risk assumed by Class Counsel in investing months of labor into gaining relief for the Class without guarantee of return. The Parties recognize also that the lawsuit captioned *Animal Outlook v. Alderfer Family Farm LLC et al.*, No. 2023-CAB-007338 (D.C. Super. Ct.), significantly contributed to bringing about the settlement conference in this Action, and that the reasonableness of Class Counsel's Fees shall also consider work performed by Class Counsel in conjunction with that action. (Settlement Agreement (Ex. A) Terms ¶ 6(b).)

### c. Payment of Class Members' Claims

Class Members will be able to claim refunds by submitting a Claim Form including either a

---

[11] A representative of Simpluris will submit a declaration detailing these plans for the Court's consideration.
[12] Information regarding Mr. Spindel's active participation in the litigation is found in the Declaration of Kim E. Richman, filed as **Exhibit C** to this Memorandum.

reasonable proof of purchase or a declaration, under penalty of perjury, of the identity and quantity of the type of Products that were purchased. (*Id.* ¶ 10(d).) The Claim Form must also include the Class Member's name, address, and telephone number; identification of the quantity and type of Products that were purchased; the retailer and the location from which the Products were purchased; and the approximate dates or date ranges during which the Products were purchased.

If the Common Fund is sufficient to allow such payments considering the number of claims made, Authorized Claimants will receive a standardized payment of $2.00 for each carton of the Products purchased during the Class Period. (*Id.* ¶ 5.) If the Class Member provides reasonable proof of purchase, there is no maximum allowance on the Class Member's claims. (*Id.* ¶ 10(g).) Claims without reasonable proof of purchase, based only upon a declaration signed under penalty of perjury, are limited to a maximum of two cartons of Products. (*Id.* ¶ 10(f).) Should the total value of Authorized Claims submitted exceed or fall short of the amounts available in the Common Fund after deducting all other expenses, any approved service award, and approved Class Counsel's Fees, then the payment per carton shall be reduced or increased on a pro rata basis, provided however that in no instance will the payment per carton exceed $3.00. (*Id.* ¶ 4(d).)

If any monies remain in the Common Fund after payments have been made to Authorized Claimants, for Class Counsel Fees, and to the Class Representative, and all other costs associated with the administration have been paid or placed in appropriate escrow, then the remainder will be exhausted through a *cy pres* distribution to Animal Outlook, the plaintiff in *Animal Outlook v. Alderfer*, No. 2023-CAB-007338 (D.C. Super. Ct.), is a national nonprofit 501(c)(3) organization, for use in for the education of consumers regarding prevailing conditions in the egg industry generally. (Settlement Agreement (Ex. A) Terms ¶ 7.)

**2.      Labeling and Marketing Changes**

As of April 12, 2024, Alderfer Poultry Farm, Inc. stopped shipping Products with packaging

or labeling that bears the "Free Roaming" language. Additionally, pursuant to the Settlement Agreement, Alderfer agrees to remove any remaining "Free Roaming" language from its Product webpages/websites and from any other Product Marketing no later than 14 days after the Effective Date. Alderfer further agrees to discontinue and not reinstate the "Free Roaming" language on Product labeling and packaging, Product websites/webpages, and in any other Product Marketing, for at least 36 months. (*Id.* ¶ 3(a)-(c).)

### B.  The Settlement's Class Release

In order to achieve finality, the Settlement Agreement provides that Class Members who do nothing—*i.e.*, who neither submit a Claim nor opt out—will be subject to this Agreement and all its terms, including but not limited to, the releases. They will receive no payment from the Common Fund. (*Id.* ¶ 10(i).)

### C.  Procedures for Opting Out or Objecting

Class Members who wish to opt out of and be excluded from the Agreement may download from the Settlement Website an Opt-Out Form—to be created by the Claims Administrator—and print, complete, and mail the form to the Claims Administrator at the mailing address stated on the Opt-Out Form. (*Id.* ¶ 11(a).) The Form must be postmarked no later than the Opt-Out Deadline, set at 90 days after the Preliminary Approval Date. (*Id.* Definitions ¶ 31, Terms ¶ 11(a).) The Opt-Out Form must be personally completed and submitted by the Class Member, and multiple-Class-Member "mass" or "class" opt-outs are not permitted. (*Id.* Terms ¶ 11(b).)

Class Members who wish to object must file a written objection by the Objection Deadline, 90 days after the Preliminary Approval date or any other such date this Court sets in its Preliminary Approval Order. (*Id.* Definitions ¶ 30; Terms ¶ 12(a).) The written objection must identify itself as an objection and identify this Action, provide sufficient information to identify and contact the objector or their attorney, and a clear and concise statement of the objection, as well as any facts or

9

law supporting the objection. (*Id.* Terms ¶ 12(b).)

## **ARGUMENT**

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). A class action can be settled only with court approval. *See* Fed. R. Civ. P. 23(e). A court may preliminarily approve a settlement-only class that would "bind class members" if the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class" and the court finds that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(3)(1); *see also, e.g.*, *Grissom v. Sterling Infosystems, Inc.*, No. 20-CV-7048 (VSB), 2024 U.S. Dist. LEXIS 197927 at *6 (S.D.N.Y. Oct. 30, 2024); W. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2011).

## I.    Certification of the Nationwide Settlement Class

A court may certify a class solely for settlement purposes "if all requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied." *In re SSA Bonds Antitrust Litig.*, No. 1:16-cv-03711-ER, 2021 U.S. Dist. LEXIS 73848 at *10 (S.D.N.Y. Apr. 2, 2021); *see also Azogue v. 16 for 8 Hospitality LLC*, No. 13-CV-7899 (TPG), 2016 U.S. Dist. LEXIS 202704 at *5 (S.D.N.Y. Feb. 8, 2016). Under Rule 23(a), class certification is "appropriate if '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-CV-3538 (VSB), 2023 U.S. Dist. LEXIS 95908 at *4-5 (S.D.N.Y. Jun. 1, 2023) (quoting Fed. R. Civ. P. 23(a)(1)-(4)). Rule 23(b)(3) is satisfied if all the plaintiffs "could prove injury and causation with common evidence." *Kurtz v. Costco Wholesale Corp.*, 818 Fed. Appx. 57, 59 (2d Cir. 2020).

In this context, "the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." W. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2011). Alderfer does not object to class certification for settlement purposes. (Settlement Agreement (Ex. A) Terms ¶ (1).).

### A.    The Numerosity Requirement of Rule 23(a)(1)

"A proposed class with more than forty members presumably satisfies the numerosity requirement." *Set Cap. LLC v. Credit Suisse Grp. AG*, No. 18-Civ-2268 (AT), 2025 U.S. Dist. LEXIS 24911 at *14 (S.D.N.Y. Feb. 11, 2025). Data supplied by Alderfer in discovery and selection of the Claims Administrator reveal that, during the Class Period, Alderfer sold millions of cartons of the Product nationwide, suggesting that the likely number of potential purchasers included within the Class easily exceeds Rule 23(a)(1)'s numerosity requirement. (Wicklund Decl. (Ex. B) ¶ 5 n.1)

### B.    The Commonality Requirement of Rule 23(a)(2)

"[C]ommonality requires that the class members' claims depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Johnson v. Nextel Communs. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). For the purposes of Rule 23, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359; *see also Elisa W. v. City of New York*, 82 F.4th 115, 127 (2d Cir. 2023). Commonality is "generally considered a low hurdle easily surmounted." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 at *9 (S.D.N.Y. Dec. 23, 2009). Here, all Class Members' claims arise from Alderfer's advertising regarding the hens supplying the Products being "Free Roaming," which the Complaint alleges to be generally misleading to reasonable consumers. "Where the same

11

conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Elisa W.*, 82 F.4th at 123 (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015)).

### C.    The Typicality Requirement of Rule 23(a)(3)

"Typicality requires the plaintiff to show 'the claims or defenses of the representative parties are typical of the claims or defenses of the class'[.]" Fed. R. Civ. P. 23(a)(3); *Ji Dong Cheng v. HSBC Bank USA, N.A.*, No. 23-7383, 2024 U.S. App. LEXIS 29455 at *2-3 (2d Cir. Nov. 20, 2024). Claims that the representative party purchased a product during the Class Period, at "prices artificially inflated by Defendants' allegedly material misstatements and omissions," and "suffered damages as a result" are "hallmarks of typicality" and "suffice to meet the typicality requirement." *Long v. Stellantis N.V.*, No. 24 Civ. 6196 (JHR) (GS), 2024 U.S. Dist. LEXIS 233663 at *10 (S.D.N.Y. Dec. 30, 2024) (quotation omitted). That is precisely the situation here. Plaintiff Spindel, like all Class Members, purchased the Product, allegedly at artificially inflated prices based on Alderfer's misrepresentations and omissions, and allegedly suffered damages as a result.

### D.    The Adequacy Requirement of Rule 23(a)(4)

Adequacy "is satisfied where '(1) class counsel is qualified, experienced, and generally able to conduct the litigation, (2) there is no conflict between the proposed lead plaintiff and the members of the class, and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Long*, 2024 U.S. Dist. 233663 at *10-11. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 249 (2d Cir. 2011). Adequacy is evaluated by "looking to the qualifications of plaintiff's counsel" and "examining the interests of the named plaintiffs." *Gomez v. Lace Entm't, Inc.*, No. 15 Civ. 3326 (CM), 2017 U.S. Dist. LEXIS 5770 at *22-23 (S.D.N.Y. Jan. 6, 2017).

12

Class Counsel will adequately represent the Class Members. Plaintiff's lead counsel has "ample experience litigating class actions," *Gomez*, 2017 U.S. Dist. LEXIS 5770 at \*24, and the issues involved with class notice and administration. (Richman Decl. (Ex. C) ¶ 7.) Class Counsel also have extensive experience in litigating consumer packaged goods, including against egg producers specifically. (Wicklund Decl. (Ex. B) ¶ 3.) Class Counsel have prosecuted this matter vigorously, engaging in discovery and in the extensive settlement negotiations discussed above. Class counsel also negotiated with the claims administrator over the course of several months, resulting in an administration plan that will cost half as much as originally estimated. (*Id.* ¶ 17.) There are no conflicts between Plaintiff and the other Class Members. Finally, Plaintiff Spindel has sufficient interest in the outcome to ensure vigorous advocacy. The harm he suffered is functionally identical to those suffered by all Class Members, he has retained competent and experienced counsel, and he has indeed been fully participating for more than 18 months in the prosecution of this matter. (Richman Decl. (Ex. C) ¶ 8.) As such, the adequacy requirement is satisfied here, and Plaintiff Spindel requests the appointment of himself as Class Representative and his attorneys Richman Law & Policy as Class Counsel.

### E.    Predominance of Common Questions of Law or Fact per Rule 23(b)(3)

Rule 23(b)(3)'s predominance requirement is satisfied if all plaintiffs "could prove injury and causation with common evidence." *Kurtz*, 818 Fed. Appx. at 59. Misrepresentation claims with "widespread and uniform misrepresentation" and the ability to prove reliance "through common evidence"—such as showing payment for the good or service, which is circumstantial proof of reliance—are "appropriate candidates" for class certification. *Catholic Health Care West v. US Foodserv.*, 729 F.3d 108, 118 (2d Cir. 2013). That the Class Members may have different damage amounts depending on how many Products they purchased is not a bar; where "liability can be determined on a class-wide basis" and plaintiffs are "unified by a common legal theory and common

13

facts, predominance is satisfied." *Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431 (AT), 2023 U.S. Dist. LEXIS 42647 at \*16 (S.D.N.Y. Mar. 14, 2023).

Plaintiff Spindel alleges that the Class Members were subject to widespread and uniform marketing representations and suffered injury in the same manner. Questions of law and fact common to the Class include whether and how consumers would read the "Free-Roaming" statement, and whether that statement would mislead a reasonable consumer. Although the specific amount of damages available involves the individual question of how many Products each Class Member purchased, that liability can be determined class-wide—the Settlement Agreement provides for uniform damages per carton purchased. Moreover, the Class is unified by a common legal theory and common facts. Predominance is satisfied.

## F.    Superiority of a Class Action for Adjudicating This Controversy

In determining whether a class action is the superior method of adjudicating a dispute, courts consider four factors: "individual control of litigation, prior actions involving the parties, the desirability of the forum, and manageability." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015). Manageability "is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication." *Id.* (quoting W. Rubenstein, *Newberg on Class Actions* § 4.72 (5th ed. 2014).)  All four factors favor class action. Where, as here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 415 (S.D.N.Y. Jan. 26, 2015) (Briccitti, J.). "[T]here has been no other litigation concerning the controversy already commenced by or against members of the class, and there is no reason why the litigation should not be concentrated in this forum." *Id.* A class action is the more manageable vehicle because individual actions would be "wasteful as there are likely thousands of class members." *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 207 (S.D.N.Y. 2022) (Daniels, J.).

Accordingly, a class action is the superior method of adjudicating this controversy.

## II.    Preliminarily Approval Under Rule 23(b)(2)

A court should grant preliminary approval where the parties show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)" and certify the class for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) directs courts to consider four factors in determining the fairness and reasonableness of a proposed settlement, namely whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *see Grissom*, 2024 U.S. Dist. LEXIS 197927 at *6. Courts in the Second Circuit "also consider whether the settlement is fair, reasonable and adequate" based on the nine factors identified in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *Grissom*, 2024 U.S. Dist. LEXIS 197927 at *6; *see also Moses v. N.Y. Times Co.*, 79 F.4th 235, 242-43 (2d Cir. 2023). (*See infra*, Section II.E (discussing *Grinnell* factors).)

### A.    Adequate Representation of Class Representative and Class Counsel

As discussed above, Class Counsel and the Class Representative have adequately represented and will continue adequately to represent the interests of the Class. *See supra* Part I.D. Class Counsel have extensive experience litigating complex consumer class actions and cases involving the egg industry. Class Members have suffered the same injury; therefore, there is no conflict between Class Representative Jeffrey Spindel and the Class Members. Plaintiff Spindel has requested his appointment as Class Representative and appointment of his attorneys Richman Law & Policy as Class Counsel.

### B.    Arms'-Length, Informed Negotiations

The settlement follows more than a year of litigation by Plaintiff Spindel here, and the contributions, similar in time, of the public interest plaintiff (also represented by Class Counsel) in the

15

*Animal Outlook* action. Plaintiff Spindel, through Class Counsel, conducted initial discovery, engaged in extended good-faith settlement discussions over the course of six months, prepared for and participated in the settlement conference, requested additional confirmatory discovery, and spent seven additional months moving from an agreement-in-principle to the exact terms of the present Settlement Agreement. *See Woods v. Fitzcon Constr./Ren Corp.*, No. 20 Civ. 8088 (ALC) (SLC), 2022 U.S. Dist. LEXIS 207464 at *9 (S.D.N.Y. Nov. 14, 2022) (noting that lengthy negotiations and settlement conferences are indicative of arms'-length negotiations). The settlement negotiations also involved multiple exchanges of information for purposes of soliciting an acceptable claims administration proposal. These were "extensive and informed negotiations" weighing in favor of preliminary approval. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (Rakoff, J.).

### C.    Adequacy of Relief Provided

To determine whether the relief the settlement provides is adequate, Rule 23(e)(2)(C) directs courts to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C).[13]

The first factor requires consideration of the costs, risks, and delay of trial and appeal. This inquiry "overlaps with the *Grinnell* factors of 'complexity, expense, and likely duration of the litigation' along with 'the risks of establishing liability,' 'the risks of establishing damages' and 'the risks of maintaining the class action through the trial.'" *Grissom*, 2024 U.S. Dist. LEXIS 197927 at *11 (quoting *Grinnell*, 495 F.2d at 463.) The Settlement Agreement's terms are more than adequate when weighed

---

[13] Rule 23(e)(2)(C)(iv) also directs courts to take into account "any agreement required to be identified under Rule 23(e)(3)." The parties have entered into no agreement that must be identified under Rule 23(e)(3) other than the Settlement Agreement.

against the risks, costs, and delay of trial and appeal in this matter. Although Plaintiff Spindel believes he has a strong case on the merits, he recognizes that there are obstacles and risks to proceeding to trial. The Parties agree that settlement "confers substantial benefits upon the Class, particularly as weighed against the risks associated with the inherently uncertain nature of a litigated outcome." (Settlement Agreement (Ex. A) Terms ¶ 2.) Indeed, even before substantial monetary relief, the settlement has already conferred benefit upon consumers in Alderfer's agreement to cease the marketing representations challenged as misleading. The Parties agree that the settlement is adequate when weighed against "the length and expense of continued proceedings." (*Id.*) There would undoubtedly be delays and hurdles to success on the merits in the absence of settlement, including the complexities of a disputed class certification, summary judgment motion practices, trial preparation, and trial, at which Alderfer would defend undoubtedly defend the challenged statements and dispute the injury to consumers. Settlement avoids the months or years this would take, and the risk posed both by a motion to dismiss and by trial.

The next factor is the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The process should both deter unjustified claims and not be unduly demanding. *Grissom*, 2024 U.S. Dist. LEXIS 197927 at *12. "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *Id.* (quoting *In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (McMahon, J.).) The plan here was formulated by competent and experienced Class Counsel in consultation with professional claims administrators. Class Members need only complete a simple Claim Form to seek relief, and the settlement is protected from unjustified claims by limiting those Class Members who cannot show reasonable proof of purchase to two cartons' worth of damages.

17

The third and final factor is "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(3). Plaintiff anticipates filing an application for a fee award not exceeding 30 percent of the Settlement Payment. (Settlement Agreement (Ex. A) Terms ¶ 6(a).) This is "consistent with what other courts in this District have approved." *Grissom*, 2024 U.S. Dist. LEXIS 197927 at *13 (approving 33.3 percent fee); *see also Suarez v. Rosa Mexicano Brands, Inc.*, No. 1:16-cv-5464 (GWG), 2018 U.S. Dist. LEXIS 63562 at *3 (S.D.N.Y. Apr. 13, 2018) (approving 33.3 percent fee). As the Parties have agreed, Class Counsel's Fees will "reflect the novel and complex nature" of the case, "the risk assumed by Class Counsel in investing months of labor into gaining relief for the Class without guarantee of return," and Class Counsel's work in the *Animal Outlook* matter, which "contributed significantly to bringing about the settlement conference." (Settlement Agreement (Ex. A) Terms ¶ 6(b).) The Settlement Agreement provides for payment of Class Counsel's Fees upon the Court's final approval of the Settlement. (*Id.* ¶ 6(c).) *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, Nos. 14-CV-1142 & 15-CV-2910, 2024 U.S. Dist. LEXIS 8711 at *23 (E.D.N.Y. Jan. 17, 2024) ("Given that the amount the Class recovers will not be affected by the amount or payment of attorneys' fees to Class Counsel, this timing provision does not result in any unfairness to Class Members.") (citing *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349, 2021 U.S. Dist. LEXIS 66719 at *19 (E.D.N.Y. Jan. 6, 2021)); *see also* Brian T. Fitzpatrick, *The End of Objector Blackmail?* 62 Vand. L. Rev. 1623, 1625-25 (2009) ("The virtue of the quick-pay provision is that objectors who bring meritless appeals can no longer delay the point at which class counsel receive their fees. Thus, class counsel have little incentive to pay objectors a premium to avoid this delay.").

### D.    Equal Treatment of Class Members

The final Rule 23 inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Agreement does so because each Class Member is "entitled to receive the same payment based on the number of [Alderfer] Products they

purchased and whether they have documented Proof of Purchase." *Hesse v. Godiva Chocolatier*, No. 1:19-cv-0972-LAP, 2022 U.S. Dist. LEXIS 72641 at *28 (S.D.N.Y. Apr. 20, 2022). Specifically, each Class Member who submits reasonable proof of purchase will be compensated $2.00 per carton, while Class Members who submit only an affidavit under penalty of perjury will be compensated $2.00 per carton for a maximum of two cartons. (Settlement Agreement, Terms ¶ 10(f).) No agreements have been struck for additional or special compensation to any Class Member other than the Service Award to Plaintiff Spindel, which will be disclosed for the Court's approval. *Cf. Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020) (ordering disgorgement as countermeasure to "objector blackmail").

### E.    Balance of the *Grinnell* Factors

As noted, Courts in the Second Circuit "consider whether the settlement is fair, reasonable and adequate" based nine factors identified in *Grinnell*, 495 F.2d at 463. *Grissom*, 2024 U.S. Dist. LEXIS 197927 at *6; *see also Moses*, 79 F.4th at 242-43. The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463; *see also Grissom*, 2024 U.S. Dist. LEXIS 197927 at *7 n.2.

The balance of the *Grinnell* factors favors this Settlement. The first factor is the complexity, expense, and expected duration of the litigation—this class action would involve "significant time, expense, and motion practice" and so this factor "weighs in favor of preliminary approval." *Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB), 2024 U.S. Dist. LEXIS 10892 at *11-12 (S.D.N.Y. Jan. 22, 2024). The second factor is the reaction of the class to the settlement. *See id.* at *12; *Grissom*,

2024 U.S. Dist. LEXIS 197927 at *15. The named Plaintiff, Mr. Spindel, favors the settlement (Settlement Agreement (Ex. A) Terms ¶ 2), which is "probative of the class reactions at this time since notice has not yet been issued." *Grissom*, 2024 U.S. Dist. LEXIS 197927 at *16; *see also Sonterra*, 2023 U.S. Dist. LEXIS 959908 at *5. The third factor is the stage of the proceedings and the amount of discovery conducted. The Parties have conducted initial discovery, have engaged in extensive settlement negotiations stretching over a year, have participated in a settlement conference, have performed significant legal research, negotiated a favorable price for claims administration, and engaged post-mediation in additional exchange of confirmatory documents and information necessary for claims administration. These efforts favor settlement. *See, e.g.*, *Medina*, 2024 U.S. Dist. LEXIS 10892 at *12.

The "fourth through sixth *Grinnell* factors require a court to consider the risks that the Plaintiff and proposed class would face absent a settlement, including the risks of establishing liability, proving damages, and maintaining a class through trial." *Id.*; *Grissom*, 2024 U.S. Dist. LEXIS 197927 at *16-17. This inquiry "overlaps" with assessing the adequacy of a settlement per Rule 23(e). *Id.*, at *11. Class Members would face risk at trial, including the possibility that "putative class members may be unwilling to participate in pre-trial discovery" and the "need to overcome Defendants' defenses." *Medina*, 2024 U.S. Dist. LEXIS 10892 at *12-13. Indeed, the Parties agree that settlement is beneficial when "weighed against the risks associated with the inherently uncertain nature of a litigated outcome." (Settlement Agreement (Ex. A) Terms ¶ 2.) Such risks support settlement.

The seventh factor is the defendants' ability to "withstand a greater judgment." *Grinnell*, 495 F.2d at 463. From an evidentiary perspective, this factor must be neutral, as there is insufficient information on the record to render a determination. That said, Class Counsel have litigated extensively in the field of egg-laying hens and egg marketing, are familiar with the margins and profit structures within that industry, and relied upon this expertise when negotiating the Settlement Agreement.

(Wicklund Decl. (Ex. B) ¶ 3.) Additionally, "a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Medina*, 2024 U.S. Dist. LEXIS 10892 at *13 (quotation omitted). All other factors here support preliminary approval, and so this factor would not change that calculus, even absent Class Counsel's efforts.

The eighth and ninth factors require courts to consider "both the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Hesse*, 2022 U.S. Dist. LEXIS 72641 at *30-31 (quotations omitted); *see also Medina*, 2024 U.S. Dist. LEXIS 10892 at *13. These factors are "often combined for the purpose of analysis." *Hesse*, 2022 U.S. Dist. LEXIS 72641 at *31 (quotation omitted). The relief proposed here—$2.00 of recovery per Product, which may be expanded to $3.00—is similar to relief in other consumer packaged goods cases in this District, including those regarding consumer misrepresentation, and is, therefore, within the range of reasonableness. *See, e.g. id.* (compensation up to $1.25 per product where consumers were alleged to be misled into believing chocolates were produced in Belgium).

In sum, the *Grinnell* factors support preliminary approval of the Settlement Agreement, to the benefit of the Class Members.

<u>**CONCLUSION**</u>

With Alderfer's consent, Plaintiff respectfully requests that the Court issue an Order (1) preliminarily certifying the Settlement Class, appointing Plaintiff Jeffrey Spindel as Class Representative, and appointing Mr. Spindel's counsel as Class Counsel; (2) preliminarily approving the proposed Settlement Agreement; (3) approving the Class Notice and the Notice Plan, and directing that Class Notice be disseminated pursuant to the Notice Plan; and (4) setting a fairness hearing and other necessary dates in connection with Final Approval of the Settlement.

DATED: March 14, 2025

**RICHMAN LAW & POLICY**

*/s/Kim E. Richman*
Kim E. Richman
1 Bridge St., Suite 83
Irvington, NY 10533
T: (914) 693-2018
krichman@richmanlawpolicy.com

*Counsel for Plaintiff and the Proposed Class*