# EXHIBIT A

# CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement and Release is entered between Defendants Alderfer Family Farm LLC and Alderfer Poultry Farm, Inc. and the Class, represented by Plaintiff Jeffrey Spindel. All capitalized terms are used according to the Definitions set forth herein.

# RECITALS

**WHEREAS,** on December 8, 2023, Plaintiff Jeffrey Spindel filed a Class Action Complaint in the United States District Court for the Southern District of New York, captioned *Spindel v. Alderfer Family Farm LLC et al.*, No. 7:23-cv-10710 (S.D.N.Y.);

**WHEREAS,** Plaintiff Spindel's Complaint alleges that Alderfer marketed certain shell egg products with representations that the eggs were sourced from "Free Roaming" hens;

**WHEREAS,** Plaintiff Spindel's Complaint further alleges that these representations were false and/or misleading to consumers because some Alderfer hens have only 1.2 to 1.6 square feet each allotted to them indoors and have minimal, quasi-outdoor access;

**WHEREAS,** Plaintiff Jeffrey Spindel's Complaint alleges that therefore, through its marketing representations, Alderfer has violated New York General Business Laws Sections 349 and 350, N.Y. Gen. Bus. Law §§ 349, 350;

**WHEREAS,** on June 26, 2024, the Parties engaged in a settlement conference before Magistrate Judge Judith C. McCarthy to determine whether a settlement of the Action could be reached, and at the end of that settlement conference, the Parties reached an arm's-length agreement in principle, the particulars of which have been further negotiated in this Agreement;

**WHEREAS,** Alderfer denies the allegations in the Complaint, denies that it engaged in any wrongdoing, denies that it committed any violation of law, denies that its advertising was in any way deceptive, believes that the Action has no merit, and maintains that it has committed no violations of law or breach of any duty;

**WHEREAS,** Alderfer enters into this Agreement in order to avoid further expense, inconvenience, delay, and interference with business operations, and to dispose of the Action and put to rest all controversy concerning the claims that have been or could have been asserted;

**WHEREAS,** Plaintiff Jeffrey Spindel continues to assert that the Action has legal merit but nevertheless believes that the terms contained herein are fair and adequate to the Class and that it is in the best interest of the Class to settle the Action on the terms set forth in this Agreement; and

**WHEREAS,** the Parties intend to request jointly that the United States District Court for the Southern District of New York conditionally certify a Class for settlement purposes;

**THEREFORE,** the Parties agree to the following terms:

## DEFINITIONS

When capitalized in this Agreement, the following terms enclosed within quotation marks have the definitions specified below.

1. "Action" means *Spindel v. Alderfer Family Farm LLC et al.*, No. 7:23-cv-10710 (S.D.N.Y.).

2. "Agreement" means this Class Action Settlement Agreement and Release.

3. "Alderfer" means, collectively, Defendants Alderfer Family Farm LLC and Alderfer Poultry Farm, Inc.

4. "Allegations" means the allegations and causes of action set forth in the Complaint, including those set forth to underlie claims for violation of New York General Business Laws Sections 349 and 350, N.Y. Gen. Bus. Law §§ 349, 350.

5. "Approved Claim" means a claim approved by the Claims Administrator, according to the terms of this Agreement.

6. "Authorized Claimant" means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator.

7. "Claim" means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

8. "Claimant" means any Class Member who submits a Claim for benefits as described in Section 10 of the Terms of this Agreement.

9. "Claims Administrator," in singular or plural, means Simpluris, agreed to by the Parties and approved by the Court to provide the Class Notice and to administer the claims process.

10. "Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely. The Claims Deadline shall be 60 days after the Notice Period ends.

11. "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement, and includes those submitted electronically.

12. "Claims Administration Expenses" means the fees charged and expenses incurred by the Claims Administrator in completing the claims administrations process set forth in this Agreement.

13. "Class" or "Class Member(s)" means all Persons in the United States who, during the Class Period, purchased in the United States, for personal or household use and not for resale or distribution, Alderfer Poultry Farm, Inc. Products. Any Person who previously received a full refund for his or her purchase of the Products is excluded from the Class definition.

14. "Class Counsel" means the following attorneys of record in the Action and any attorneys assisting in the representation of the Class in the Action:

> Kim E. Richman
> Richman Law & Policy
> 1 Bridge Street, Suite 83
> Irvington, NY 10533.

15. "Class Counsel's Fees" means the amount awarded as attorneys' fees to the Class Counsel by the Court for prosecuting the Action and negotiating and implementing this Agreement.

16. "Class Notice" means collectively the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties, including both the Class Notice and all additional forms of notice agreed to by the Parties that will be submitted to the Court in connection with the Motion for Preliminary Approval of the Class Action Settlement and Approval of Form and Manner of Notice.

17. "Class Period" shall mean the period from December 1, 2020 up through and until the Effective Date.

18. "Class Released Claims" means the claims released by the Class Members via this Agreement.

19. "Class Representative" means Plaintiff Jeffrey Spindel.

20. "Common Fund" means $287,500.00 dollars set aside as part of the Settlement Consideration, from which the Claims Administrator shall disburse approved Class Counsel's Fees and expenses, service award(s), and Class Member Claims, and shall withdraw approved expenses for Claims Administration and Class Notice.

21. "Complaint" means the Class Action Complaint filed in the Action.

22. "Court" means the United States District Court for the Southern District of New York.

23. "Defendants" means and is synonymous with the defined term Alderfer.

24. "Effective Date" means the date on which the judgment approving this Agreement becomes final. For purposes of this definition, the Final Settlement Approval Order and Judgment

shall become final at the latest date of the following: (i) if no appeal from the Final Settlement Approval Order and Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Final Settlement Approval Order and Judgment; or (ii) if an appeal from the Final Settlement Approval Order and Judgment is filed, and the Final Settlement Approval Order and Judgment is affirmed or the appeal dismissed, and the deadline to file a petition for certiorari has passed, the date of such affirmance or dismissal; or (iii) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (iv) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

25. "Final Settlement Hearing" or "Final Approval Hearing" means the hearing to be conducted by the Court to determine whether to enter the Final Settlement Approval Order and Judgment.

26. "Final Settlement Approval Order and Judgment" or "Judgment" means the Court's final order approving the Agreement and entering judgment.

27. "Marketing" means the use of any print advertisement, Internet advertisement, social media presence, labeling, radio advertisement, television advertisement, billboard, banner advertisement, website, letter, postcard, brochure, pamphlet, packaging, offer, placard, in-store display, or other attempt, effort, or process that conveys any information, invitation, or offer to any Person to become aware of, purchase, review, compare, or otherwise acquire any product, including but not limited to, statements made on product packaging, in print, online, and on video.

28. "Notice Period" means the notice period to potential Class Members. Class Notice shall run for a period of 90 days and shall commence within 21 days after the Preliminary Approval Date.

29. "Notice Plan" means the plan for dissemination of the Class Notice to be agreed upon by the Parties that will be submitted to the Court in connection with the Motion for Preliminary Approval of Class Action Settlement and Approval of Form and Manner of Notice.

30. "Objection Deadline" means 90 days after the Preliminary Approval date or other such date as the Court may order in its Preliminary Approval Order. It is the date by which the Class Members must file with the Court and serve on all Parties (i) a written statement objecting to any terms of the settlement or to Class Counsel's Fees, and (ii) a written notice of intention to appear if they expect to present in person at the Final Approval Hearing objections to any terms of the settlement or to Class Counsel's Fees.

31. "Opt-Out Deadline" means 90 days after the Preliminary Approval Date (to be concurrent with the Claims Deadline) or other such date as the Court may order in its Preliminary Approval Order.

32. "Opt-Out Form" means the form, created by the Claims Administrator, which a Class Member must print, complete, and mail in to the Claims Administrator to elect to be excluded from the Agreement.

33. "Other Counsel" means any other attorney(s) representing any Class Member who is not Class Counsel.

34. "Party" or "Parties" means Plaintiff Jeffrey Spindel, the Class Members, and Alderfer either individually or collectively.

35. "Person" means any natural individual, corporation, partnership, association, or any other type of legal entity.

36. "Plaintiff" means Jeffrey Spindel.

37. "Preliminary Approval Date" means the date of entry of the Court's order granting preliminary approval of the Agreement substantially in the form of the Preliminary Approval Order that will be submitted in connection with the Motion for Preliminary Approval of Class Action Settlement and Approval of Form and Manner of Notice.

38. "Products" means all non-organic Alderfer Poultry Farm, Inc. egg products Marketed with the statement "Free Roaming" during the Class Period. A full list of Products is appended hereto as Exhibit A.

39. "Released Claims" means all individual, class, representative, group, or collective claims, demands, rights, suits, liabilities, damages, losses, injunctive and/or declaratory relief, and causes of action released pursuant to this Agreement.

40. "Released Person(s)" means respectively, Alderfer; any distributors and/or retailers of the Products; any Persons that are currently, or have in the past been, marketing, advertising, distributing, selling, or reselling the Products; and any current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns; and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns.

41. "Releasing Person(s)" means Plaintiff Jeffrey Spindel, each Class Member who does not file an Opt-Out Form, and any Person filing a Claim by or through a Class Member, including but not limited to spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or affiliates.

42. "Settlement Payment" means $287,500.00 transferred by Alderfer to the Claims Administrator for the creation of the Common Fund.

43. "Settlement Website" means a website maintained by the Claims Administrator to provide the Class with information relating to the settlement.

44. "Spindel" means the Plaintiff Jeffrey Spindel.

## TERMS

1. ***Conditional Class Certification for Settlement Purposes Only***

   a. This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of (i) the validity of any claim or Allegation by any Plaintiff, or of any defense asserted by Alderfer in the Action or any other proceedings; (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Person, or their respective counsel; or (iii) the propriety of class certification.

   b. For the sole and limited purpose of settlement, the Parties stipulate to and request that the Court conditionally certify the Class under Federal Rule of Civil Procedure 23(b)(3), which stipulation is contingent upon the occurrence of the Effective Date. Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as, an admission of any kind, or be used for any purpose in the Action, or in any other pending or future action. In the event that the Agreement is terminated pursuant to its terms or the Final Settlement Hearing does not occur for any reason, the certification of the Class shall be vacated, and the Action shall proceed as it existed prior to execution of this Agreement.

   c. The Court's certification of the Class shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement, and shall not be considered the law of the case, res judicata, or collateral estoppel in the Action or any other proceeding unless and until the Court enters a Judgment. Regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.

   d. In the event the Court does not enter a Judgment, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered void, the Parties' agreement to certification of the Class for settlement purposes shall be void and the Court's certification order (if any is ordered) shall be vacated, and thereafter no new class or classes will remain certified.

DM1\16153554.1                                6

   e. Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any new class in this Court or any other court if the Court does not enter a Judgment, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other class in any other court under any circumstances.

   f. Subject to the Court's approval, and for settlement purposes only, Alderfer consents to the appointment of Jeffrey Spindel as Class Representative of the Class, and to appointment of Richman Law & Policy of Irvington, New York as Class Counsel.

   g. The Preliminary Approval Order shall contain a provision enjoining Class Members who have not opted out of the Agreement from proceeding with any competing claims against the Released Persons related or similar to the Allegations in this Action.

   h. Upon final approval of the Agreement by the Court, a Judgment substantially in the form agreed upon by the Parties, and conforming with the definition of Final Settlement Approval Order and Judgement above, will be entered by the Court.

2. ***Benefits of the Agreement***

Class Counsel and Class Representative believe the Agreement confers substantial benefits upon the Class, particularly as weighed against the risks associated with the inherently uncertain nature of a litigated outcome; the complex nature of the Action, in which Plaintiff has propounded written discovery requests and noticed Fed. R. Civ. P. 30(b)(6) depositions; and the length and expense of continued proceedings through responding to discovery, fact depositions, expert depositions, third-party document productions and depositions, class certification briefing, summary judgment briefing, trial, and appeals. Based on their evaluation of such factors, Class Counsel and the Class Representative have determined that the settlement, based on the terms outlined herein, is in the best interests of the Class.

3. ***Marketing Changes and Sales Data***

   a. As of April 12, 2024, Alderfer Poultry Farm, Inc. has stopped shipping Products with packaging or labeling that bears the "Free Roaming" language.

   b. Alderfer Poultry Farm, Inc. will remove any remaining "Free Roaming" language (i) from its Product webpage(s)/website(s); and (ii) from any other Product Marketing no later than 14 days following the Effective Date.

   c. For a period of 36 months following April 12, 2024, Alderfer Poultry Farm, Inc. commits to discontinue and not to reinstate the "Free Roaming" language (i) on Product packaging and labeling, (ii) on Product webpage(s)/website(s), and (iii) in any other Product Marketing. To the extent the Marketing is amended after the scope of this Agreement, Plaintiff does not release claims related to those Marketing amendments.

   d. Alderfer Poultry Farm, Inc. will provide Plaintiff's Counsel with a signed declaration under penalty of perjury identifying its total gross sales of Products from December 1, 2020 through April 30, 2024.

4.     ***Common Fund***

a.     The settlement amount of $287,500.00 shall be made in two payments. The first payment of $143,750.00 will be due ten days from the Preliminary Approval Date and deposited in the Claims Administrator's interest-bearing trust account. The second payment of $143,750.00 will be due on the Effective Date. In the event the Effective Date does not occur, no payments or distributions of any kind shall be made pursuant to this Agreement, except the costs and expenses of the Claims Administrator actually accrued, and any of the settlement amount that remains in the Claims Administrator's interest-bearing trust account shall revert to Alderfer. In the event the Effective Date does occur and Alderfer fails to make the second payment, Plaintiff agrees to give Alderfer written notice of any default and not to take other action to cause an order or judgment to be entered in connection with this lawsuit until after seven days have elapsed from the date such notice has been received by Alderfer's attorneys. If Plaintiff must thereafter take action with the Court to enforce the Agreement, Alderfer will pay Plaintiff's attorneys' fees and costs.

b.     The Common Fund shall cover all expenses associated with the Agreement and approved by the Court, including without limitation, Class Notice, Claims Administration Expenses, Class Member Claims, any service award to the Class Representative, and Class Counsel's Fees as approved by the Court. Interest on the Common Fund shall inure to the benefit of the Class.

c.     All taxes on the income of the Common Fund, and any costs or expenses incurred in connection with the taxation of the Common Fund, shall be paid out of the Common Fund, shall be considered a cost of administration, and shall be timely paid by the Claims Administrator without prior order of the Court. The Parties shall have no liability or responsibility for the payment of any such taxes.

d.     In the event that the total value of Authorized Claims submitted exceeds or falls short of the amounts available in the Common Fund after deducting all other expenses, any approved service award, and approved Class Counsel's Fees, then the payment per carton shall be reduced or increased on a pro rata basis, provided however, that in no instance shall the payment per carton exceed $3.00. In the event that funds remain in the Common Fund following these expenses, the remaining funds shall be distributed pursuant to Terms ¶ 7.

e.     In no case shall Alderfer be required to contribute or pay additional funds to the Common Fund and/or the settlement set forth herein beyond the payments referenced herein, including but not limited to any payments for attorneys' fees or fees associated with notice and/or administration.

5.     ***Class Member Claims***

If the Common Fund is sufficient to allow such payments (and subject to the limitations described above (*see* Terms ¶ 4(a)-(e)) and subject to the further limitations and requirements set forth below), considering the number of Authorized Claims made, for each carton of the Products

DM1\16153554.1                                                                 8

purchased during the Class Period, Authorized Claimants will receive a standardized payment of $2.00.

6. ***Expenses, Attorneys' Fees, and Other Costs***

      a.    Class Counsel and the Class Representative shall request attorneys' fees and costs, including a service award to Plaintiff Jeffrey Spindel and Class Counsel's Fees, to be paid from the Common Fund. Alderfer will not contest a request for Class Counsel's Fees that does not exceed 30% of the Settlement Payment, or payment of a reasonable service award to Plaintiff Jeffrey Spindel not to exceed $5,000 for his willingness to bring this Action and represent the interests of Class Members.

      b.    The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of the Action, as well as the risk assumed by Class Counsel in investing months of labor into gaining relief for the Class without guarantee of return. The Parties recognize also that the lawsuit captioned *Animal Outlook v. Alderfer Family Farm LLC et al.*, No. 2023-CAB-007338 (D.C. Super.), brought in the Superior Court of the District of Columbia, contributed significantly to bringing about the settlement conference in this Action, and that the reasonableness of Class Counsel's Fees shall also consider work performed by Class Counsel in conjunction with that action.

      c.    Upon Court approval of this Agreement and Class Counsel's Fees, the Claims Administrator shall promptly distribute to Class Counsel the full amount of Class Counsel's Fees awarded, regardless of any pending appeals or other delay in implementation of the remaining provisions of this Agreement. In the event that an appeal is successful and results in reversal of the approval of this Agreement, or in a reduction of the award of Class Counsel's Fees, or if for any other reason this Agreement fails to become final, Class Counsel shall promptly refund the full amount of the Fees or the difference after reduction, as required, along with interest at the same interest rate as the interest-bearing account referred to in paragraph 4(a), to the Claims Administrator for further distribution in accordance with this Agreement or for return to Alderfer pursuant to paragraph 4(a).

7. ***Failure to Exhaust Funds***

After payments have been made to Authorized Claimants, to Class Counsel for Class Counsel Fees, and to the Class Representative, and all other costs associated with the administration of this settlement have been paid or placed in appropriate escrow, any remaining funds will be exhausted through a distribution to Animal Outlook, plaintiff in the lawsuit captioned *Animal Outlook v. Alderfer Family Farm LLC et al.*, No. 2023-CAB-007338 (D.C. Super.), to be used by Animal Outlook for the education of consumers regarding prevailing conditions in the egg industry generally.

Approval by the Court, both of designation of Animal Outlook as the beneficiary of funds not otherwise exhausted, and of distribution to be made to Animal Outlook in accordance with this Agreement, will be required before any distribution shall be made. If and to the extent required by the Court, and notwithstanding any other provision of this Agreement, the Parties further agree

that they may allow for additional or different beneficiaries of residual funds via a written addendum to this Agreement.

8. **Retention of Claims Administrator**

The Parties agree to retain Simpluris as Claims Administrator to effect Class Notice and administration. The Claims Administrator shall assist with various administrative tasks, which may include:

a. Arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

b. Answering written inquiries from Class Members and/or forwarding such inquiries to Class Counsel;

c. Receiving and maintaining Opt-Out Forms of Class Members who wish to opt out of and be excluded from the Agreement;

d. Establishing a Settlement Website;

e. Establishing and staffing a toll-free informational telephone number for Class Members;

f. Receiving and processing Claims and distributing payments to Authorized Claimants; and

g. Otherwise assisting with administration of the Agreement.

9. **Timing**

All Claim Forms must be postmarked or received by the Claims Administrator by the Claims Deadline to be considered timely. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, in the Class Notice, on the Settlement Website, and on the front of the Claim Form.

10. **Procedure**

a. Class Notice will include digital publication in a manner determined by the Claims Administrator to reach likely Class Members.

b. All Claims must be submitted with a Claim Form and received by the Claims Administrator by the Claims Deadline.

c. The Claim Form will be available on the Settlement Website. The Claim Form will be available to fill out and submit online or to download, or will be mailed to Class Members upon request by calling or writing to the Claims Administrator. Class Members may

submit their completed and signed Claim Forms to the Claims Administrators by mail or online. Claim Forms must be postmarked or submitted online on or before the Claims Deadline.

        d.     The Claim Form must include a reasonable proof of purchase, or must include a declaration, under penalty of perjury, of the identity and quantity of the type of Products that were purchased. All Claim Forms must include:

     i. Class Member name, address, and telephone number;
    ii. Identification of the quantity and type of Product(s) that were purchased;
   iii. The retailer and the location (city and state) of the retailer from which the Products were purchased; and
   iv. The approximate date(s) or date range(s) on or during which the Products were purchased.

        e.     The Claims Administrator shall retain the sole discretion to accept or reject a given Claim Form.

        f.     Claims that are based only upon a declaration signed under penalty of perjury (*i.e.*, do not include reasonable proof of purchase) shall be limited to a maximum of two cartons of Products.

        g.     Claims based on a reasonable proof of purchase are not subject to any maximum allowance, but for such Claims, the Claims Administrator may at its discretion require a declaration signed under penalty of perjury that provides additional information, including, but not limited to, that the purchases were for personal use at a specific location.

        h.     The Claims Administrator shall pay out Approved Claims in accordance with the terms of this Agreement commencing ten days after the Effective Date or as otherwise ordered by the Court.

        i.     Class Members who do nothing—*i.e.*, who neither submit a Claim nor opt out—will be subject to this Agreement and all of its terms, including but not limited to, the releases, and will receive no payment from the Common Fund.

    11.    **Opt-Out Procedure**

        a.     Class Members who wish to opt out of and be excluded from the Agreement must download from the Settlement Website an Opt-Out Form, to be created by the Claims Administrator, and print, complete, and mail the form to the Claims Administrator, at the mailing address stated on the Opt-Out Form, with a postmark no later than the Opt-Out Deadline.

        b.     The Opt-Out Form must be personally completed and submitted by the Class Member, and multiple-Class-Member "mass" or "class" opt-outs shall not be permitted.

  c. The Claims Administrator shall be responsible for processing opt-outs and objections, if any, including promptly providing Class Counsel and counsel for Alderfer with copies of same.

12. ***Procedures for Objecting to the Settlement***

Class Members have the right to appear and show cause as to why the Court should not grant final approval of the Agreement, subject to each of the following provisions:

  a. *Written Objection Required.* Any objection to the Agreement must be in writing, filed with the Court, with a copy served on Class Counsel and counsel for Alderfer at the addresses set forth in the Class Notice and in Miscellaneous Provision ¶ 17(b) below, by the Objection Deadline.

  b. *Form of Written Objection.* Any objection regarding or related to the Agreement shall contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection.

  c. *Authorization of Objections Filed by Attorneys Representing Objectors.* Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must either sign the Objection personally or execute a separate declaration stating that the Class Member authorizes the filing of the objection by the attorney.

  d. *Effect of Both Opt-Out and Objection.* If a Class Member submits an Opt-Out Form, the Class Member will be deemed to have opted out of the Agreement, and thus ineligible to object. Any objecting Class Member who has not timely submitted a completed Opt-Out Form for exclusion from the Agreement will be bound by the terms of the Agreement upon the Court's final approval of the Agreement, regardless of any Objection.

13. ***Release of Alderfer***

Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Released Persons from all individual, class, representative, group or collective claims, demands, rights, suits, liabilities, damages, losses, injunctive and/or declaratory relief, and causes of action of every nature and description (with the exception of personal injury claims), including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity, existing under federal or state law, regardless of legal theory or relief claimed that any Class Member has or may have in the future against the Released Persons arising out of or related in any way to:

  a. Labeling, sales, Marketing, advertising, or other communications, regardless of medium, of or regarding any "Free Roaming" language used in the Products' Marketing; and

b. Any allegedly false or misleading statement or omission in or on the labeling or marketing of the Products bearing "Free Roaming" language that have been, or which could have been, asserted in the Action, and in connection with the conduct of the Action. This release does not release any alleged personal injury claims. To be clear, to the extent that any action or proceeding includes both claims for personal injury and claims that would otherwise fall within the scope of this release, the personal injury claims will not be deemed released, but the other claims will be released. To the extent that any Class Member asserts a cause of action or other claim that would otherwise fall within the scope of this release but asserts the right to recover both damages caused by personal injury and some other type of damages (for example, but not limited to, economic or statutory damages), that cause of action or claim will survive this release only to the extent of damages caused by personal injury.

14. *Release of Plaintiff, the Class Members, and Class Counsel*

Upon the Effective Date, Alderfer will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Plaintiff Jeffrey Spindel, the Class Members, and Class Counsel from any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Alderfer has or may have against any of them arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action, and in connection with the filing and conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

15. *Class Action Fairness Act*

a. The Class Action Fairness Act of 2004 ("CAFA") requires Alderfer to inform certain federal and state officials about this Agreement. *See* 28 U.S.C. § 1715.

b. Under the provisions of CAFA, the Claims Administrator, on behalf of Alderfer, will serve notice upon the appropriate officials within ten calendar days after the Parties file the proposed Agreement with the Court. *See* 28 U.S.C. § 1715(b).

c. The Parties agree that either the Claims Administrator or Alderfer is permitted to provide CAFA notice as required by law and that any such notice shall be done to effectuate the Agreement and shall not be considered a breach of this Agreement.

d. If any of the notified federal or state officials takes any action adversely affecting the validity or enforceability of this Agreement or the terms herein or seek to impose additional terms or liability on Alderfer for matters resolved by the Class Released Claims, Alderfer may, at its option, suspend the implementation of the Agreement pending the outcome of the action initiated by the notified federal or state official, or provided that the Court has not yet entered the Final Settlement Approval Order and Judgment, may elect to void the Agreement by written notice to Class Counsel.

16. **Court Approval**

    a.    Promptly after executing this Agreement, Plaintiff will submit to the Court the Agreement, together with its exhibit, and will request that the Court grant preliminary approval of the proposed Agreement, issue a Preliminary Approval Order, and schedule a Final Approval Hearing to determine whether the Agreement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for a service award should be granted. As part of the preliminary approval motion, the Parties will request the Court to certify the Class provisionally for settlement purposes, and formally to appoint Class Counsel. The Parties intend and acknowledge that any such certification and appointment would be for purposes of the Agreement only, and not effective in continuing litigation between the Parties, if any.

    b.    In the event the Agreement is not preliminarily approved, the Parties agree to resume settlement discussion in good faith for at least 21 days. If after 21 days the Parties have not agreed to amended settlement terms, then the Parties shall request that all pretrial and trial deadlines and dates be reset by the Court. The Parties agree to provide the Court with a proposed schedule within 28 days after an order of the Court denying preliminary approval.

    c.    In the event the Agreement is preliminarily approved, a Final Settlement Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than 100 days after the Preliminary Approval Date. Upon final approval of the Agreement by the Court at or after the Final Settlement Hearing, the Parties shall seek and obtain from the Court the Final Settlement Approval Order and Judgment.

    d.    Objecting Class Members may appear at the Final Approval Hearing to be heard. The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection.

    e.    If this Agreement is not given final approval by the Court, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval. Failing this, the Parties will be restored to their respective places in the litigation. In such event, the terms and provisions of this Agreement will have no further force or effect with respect to the Parties and will not be used in the Action or in any other proceedings for any purposes, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated.

17. **Miscellaneous Provisions**

    a.    *Entire Agreement.* This Agreement constitutes the entire Agreement among the Parties with regard to the subject matter of this Agreement and supersedes any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, conditions, representation, warranty, inducement, negotiation, or

undertaking concerning any part or all of the subject matter of this Agreement has been made or relied upon except as expressly set forth herein.

   b. *Notices Under This Agreement.* All notices or mailings required by this Agreement to be provided or approved by Class Counsel, Alderfer, or Alderfer's counsel, or otherwise made pursuant to this Agreement will be made to:

To the Class:
Kim E. Richman
Richman Law & Policy
1 Bridge Street, Suite 83
Irvington, NY 10533

and

Ryan Kao
Simpluris
ryan.kao@simpluris.com

Bri Nelson
Simpluris
bnelson@simpluris.com

To Alderfer:

Rebecca E. Bazan
Duane Morris LLP
901 New York Avenue NW, Suite 700E
Washington, DC 20001.

   c. *Good Faith.* The Parties acknowledge that each intends to implement and comply with the terms of this Agreement. The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions herein.

   d. *Binding on Successors.* This Agreement will be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement.

   e. *Arms'-Length Negotiations.* The Agreement compromises claims that are contested, and the Parties agree that the consideration provided to the Class and other terms of the Agreement were negotiated in good faith and at arms' length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' settlement conference before Magistrate Judge Judith C. McCarthy of the United States District Court for the Southern District of New York. The determination of the

terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application. All Parties agree that this Agreement was drafted by Class Counsel and Alderfer's counsel at arms' length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

      f.    *Waiver.* The waiver by one Party of any provision or breach of this Agreement will not be deemed a waiver of any other provision or breach of this Agreement.

      g.    *Modification in Writing Only.* This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by all Parties.

      h.    *Headings.* The descriptive headings of any paragraph or sections of this Agreement are included for convenience of reference only and do not constitute part of this Agreement or modify any part thereof.

      i.    *Governing Law.* This Agreement will be interpreted, construed, and enforced according to the laws of the State of New York, without regard to conflicts of laws.

      j.    *Continuing Jurisdiction.* After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for the purposes of (i) enforcing this Agreement; (ii) addressing settlement administration matters; and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law, including under the All Writs Act.

      k.    *Agreement Constitutes a Complete Defense.* To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

      l.    *Execution.* This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

ON BEHALF OF Jeffrey Spindel and the Proposed Settlement Class:

*[DocuSigned signature]*     Date: 2/24/2025

ON BEHALF OF Alderfer:

*J. Michael Alderfer*     Date: 2/21/2025

## EXHIBIT A – LIST OF ALDERFER POULTRY FARM, INC. PRODUCTS

1. Extra Large, Grade A Brown Eggs, Certified Humane, Natural, Cage Free (paper carton)

2. Large, Grade A Brown Eggs, Certified Humane, Natural, Cage Free (paper carton)

3. Large, Grade A Eggs, Natural, Cage Free (paper carton)

4. Large, Grade A White Eggs, Omega, Cage Free (paper carton)

5. Jumbo, Grade A Brown Eggs, Cage Free (plastic carton)

6. Large, Grade A Brown Eggs, Certified Humane, Cage Free (plastic carton)

7. Large, Grade A Eggs, Cage Free, 18-count (plastic carton)

8. Medium, Grade A Brown Eggs, Cage Free (plastic carton)

9. Large, Grade A White Eggs, Omega, Cage Free (plastic carton)

10. Large, Grade A Brown Eggs, Certified Humane, Cage Free, 6-count (plastic carton)

11. Large, Grown Eggs, Cage Free (paper carton)