# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFERY SPINDEL, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ALDERFER FAMILY FARM LLC, *et al.*,<br><br>*Defendants*. | Case No. 7:23-cv-10710-PMH<br><br>District Judge Philip M. Halpern<br>Magistrate Judge Judith C. McCarthy |

**DECLARATION OF P. RENÉE WICKLUND IN SUPPORT OF PLAINTIFF'S MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, APPOINTMENT OF JEFFREY SPINDEL AS CLASS REPRESENTATIVE, APPOINTMENT OF RICHMAN LAW & POLICY AS CLASS COUNSEL, <u>AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

I, P. Renée Wicklund, hereby declare:

1. I am the co-founder of Richman Law & Policy, who serve as attorneys for Plaintiff Jeffrey Spindel ("Plaintiff" or "Spindel") in this action. All the facts stated herein are based on my personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2. On June 26, 2024, I represented Plaintiff Jeffrey Spindel at a settlement conference for this case, facilitated by Magistrate Judge Judith C. McCarthy. At the same settlement conference, I also represented the interests of the nonprofit public interest plaintiff in the related case *Animal Outlook v. Alderfer Family Farm LLC*, No. 2023-CAB-007338 (D.C. Super. Ct.).

3. I and my colleagues at Richman Law & Policy have extensive experience litigating claims regarding the marketing of shell-egg products, including marketing representations concerning the welfare and treatment of egg-laying hens. I have personally participated in the

1

development and prosecution of the following cases, and regarding those that have resolved, I have personally participated in negotiating the resolution:

- *Animal Outlook v. Alderfer*, No. 2023-CAB-007338 (D.C. Super. Ct.) (companion case to this action);

- *Reimer v. Eggland's Best, Inc. et al.*, No. 1:24-cv-11311 (E.D. Ill.)

- *Organic Consumers Association v. Eggland's Best, Inc. et al.*, No. 2024-CAB-001661 (D.C. Super. Ct.);

- *Vilchis v. Eggland's Best, Inc. et al.*, No. 1:24-cv-02073 (N.D. Ill.);

- *Roye v. Eggland's Best, Inc. et al.*, No. 2:24-cv-02083-GW-BFM (C.D. Cal.);

- *Organic Consumers Association v. Noble Foods, Inc. d/b/a The Happy Egg Co. USA*, No. 2020 CA 002009 B (D.C. Super. Ct.);

- *Vital Farms, Inc. v. Handsome Brook Farm, LLC*, No. 3:16-cv-01421-GTS-DEP (N.D.N.Y.);

- *Organic Consumers Association v. Handsome Brook Farm, LLC*, No. 2016-CA-006223-B (D.C. Super. Ct.);

In addition, I have provided litigation advising services to businesses in the shell-egg market; have represented egg producers in such matters as trademark and copyright disputes; have advised egg producers on accurate presentation and marketing; have consulted with third-party certifiers and husbandry experts regarding the welfare of egg-laying hens; and maintain regular contact with consumer-advocacy and animal welfare groups addressing issues in the shell-egg market.

4. Based on the foregoing experience, I am aware of the narrow margins of profit and risks that prevail within the market for hen eggs. I brought the awareness to the settlement conference in this case, for the purpose of assessing what level of monetary payment Defendants Alderfer Family Farm, LLC and Alderfer Poultry Farm, Inc. (collectively, "Alderfer" or "Defendants") could likely withstand, what would be fair compensation for consumers who may

2

have purchased Alderfer's Products (as defined in the Settlement Agreement), and what types and level of marketing changes should be requested as part of any resolution of the two cases at issue.

5. At the settlement conference before Magistrate Judge McCarthy on June 26, 2024, the parties agreed to tentative terms for resolution of both *Spindel v. Alderfer Family Farm LLC* on a class basis and *Animal Outlook v. Alderfer Family Farm LLC*. The resolution of both cases would involve significant marketing changes, including the removal of the "Free Roaming" representations, and creation of a $287,500 common fund to benefit consumers. In order to increase the size of the fund, Plaintiff Spindel agreed to the revision of the Class definition to encompass purchasers nationwide, instead of only in New York.[1]

6. The parties have worked steadily since the settlement conference in order to finalize the terms of the Settlement Agreement now presented for the Court's approval, including confirmatory discovery for purposes of class notice and evaluation of the fairness of the settlement, and seeking multiple revised bids from claims administrators in order to reduce costs.

7. On July 10, 2024, my team began contacting potential claims administrators, all of whom indicated that additional information regarding sales reach was necessary to determine the scope of notice and administration.

8. On July 12, 2024, my team met with Alderfer's counsel to discuss what additional information was needed to secure a claims administrator. Alderfer agreed to provide that additional information.

---

[1] According to information provided by Alderfer at the settlement conference, and later confirmed with additional documentation, the vast majority of the Alderfer Products at issue are sold in the Northeast, and nearly half of the Alderfer Products at issue are sold in New York State, where Plaintiff Spindel resides. The documentation supplied by Alderfer indicated the sale of millions of cartons nationwide during the Class Period, as defined in the Settlement Agreement.

9. On July 15, 2024, my team provided the first formal proposed Settlement Agreement to Alderfer for review.

10. On August 2, 2024, Alderfer's counsel returned the proposed Settlement Agreement with revisions.

11. On August 9, 2024, my team met with Alderfer's counsel to discuss additional information needed from Alderfer to proceed with selecting a claims administrator.

12. On August 13, 2024, Alderfer supplied the additional information requested by potential claims administrators, which my team provided to the potential claims administrators in order to begin receiving bids on claims administration.

13. Throughout August and September 2024, my team worked with potential claims administrators on the contours of a claims administration process that would provide adequate notice without using too much of the $287,500 common fund.

14. On September 23, 2024, my team proposed additional revisions to the draft Settlement Agreement.

15. On September 25, 2024, my team met with Alderfer's counsel to discuss the various claims administration proposals.

16. On November 4, 2024, Alderfer responded to Plaintiff Spindel's revisions to the proposed settlement agreement.

17. On December 4, 2024, my team provided Alderfer with an update on the plans for claims administration, including new proposals for a shorter notice period in order to preserve a greater share of the common fund for consumers, and with a near-final draft of the Settlement Agreement.

18. On January 9, 2025, my team met with Alderfer's counsel to resolve the last remaining issues with the Settlement Agreement, including agreement on the shorter notice period and less expensive claims administration, and the designation of the nonprofit organization Animal Outlook as potential *cy pres* recipient of any monies remaining in the common fund after payment of all claims to consumers. Thereafter, my team began drafting the papers for preliminary approval now before the Court.

19. On February 10, 2025, the parties jointly notified this Court of their agreement to the final terms of the Settlement Agreement.

20. On February 24, 2025, Plaintiff Spindel and Alderfer each executed the Settlement Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 14th day of March in Park City, Utah.

Respectfully submitted,

*/s/ P. Renée Wicklund*
P. Renée Wicklund